**RADIOTELEPHONE CO. OF INDIANA, INC., Appellant (Plaintiff),**

v.

**Paul T. FORD, (Defendant),**

**Wilgro Shopping Center, Appellee (Garnishee Defendant).**

No. 49A02–8705–CV–201.

Court of Appeals of Indiana, Second District.

Dec. 14, 1988.

---

John M. Cronin, Cronin & Rose, Indianapolis, for appellant.

David J. Backer, Stephen A. Backer, Backer & Backer, P.C., Indianapolis, for appellee Wilgro Shopping Center.

BUCHANAN, Judge.

## CASE SUMMARY

Plaintiff-appellant Radiotelephone Co. of Indiana, Inc. (Radiotelephone) appeals an order entered in favor of defendant-appellee Wilgro Shopping Center (Wilgro) in proceedings supplemental, claiming that the trial court erred when it refused to enforce a judgment obtained by Radiotelephone against Wilgro. Radiotelephone bases its claim on an equitable lien it possessed on money Wilgro owed to the judgment defendant Paul Ford (Ford).

We reverse.

## FACTS

In April of 1983, Radiotelephone secured a default judgment of $7,113.95 against Ford. During the ensuing three years, Radiotelephone sought satisfaction of its judgment against Ford through proceedings supplemental. The judgment, however, remained unpaid.

Frustrated in its attempts to secure payment and believing Wilgro to be indebted to Ford, Radiotelephone named Wilgro as garnishee defendant in proceedings supplemental on September 17, 1986. The summons to Wilgro was in the form of an order to appear or answer interrogatories regarding money Wilgro owed Ford. The order to appear or answer interrogatories, which was served on Wilgro on September 19, 1986, informed Wilgro of the outstanding judgment against Ford and the amount thereof, but it did not expressly state that Radiotelephone intended to maintain a lien on the money. The relevant portion of the summons stated:

"Comes now the plaintiff [Radiotelephone] and files his verified Motion for Proceedings Supplemental to Execution, which is in the following words and figures:

(H.I.)

And the Court, being duly advised in the premises, finds that the allegations contained in said motion are true and that the plaintiff owns a judgment herein against the judgment defendant [Ford] in the amount of $7113.95, interest, and costs of $76.00 and that the garnishee defendant [Wilgro] should be ordered to appear in court personally, or answer interrogatories under oath, concerning the wages, assets, income, profits, or other non-exempt property, due or to become due, to said judgment debtor and return same to this court prior to the date of the hearing.

IT IS ORDERED, ADJUDGED, AND DECREED by the Court as follows:

1) That the garnishee defendant appear personally in this Court on the 17th day of OCTOBER, 1986 at 1:30 o'clock P.M. to present any claim or defense to these proceedings supplemental to execution, and to answer as to any wages, assets, income, profits or other non-ex-

empt property due or to become due the judgment debtor; OR

Pursuant to Local Rule 26(B) garnishee defendant in lieu of appearing as above ordered, may file with the Court answers to the interrogatories attached hereto.

2) That the Sheriff of Marion County, not less than twenty (20) days prior to the date of hearing, serve this order and a copy of the Motion for Proceedings Supplemental to Execution as filed herein, personally upon the garnishee defendant and make due return thereof."

*Record* at 24. On September 26, 1986, Wilgro answered and returned the interrogatories, indicating that it was indebted to Ford in the amount of $13,000 for roofing work at the shopping center. On an unspecified date shortly thereafter, Radiotelephone advised Wilgro by letter that Wilgro would be liable for any money it paid out to Ford.

After the summons was served on Wilgro on September 19, 1986, Wilgro made two separate payments to Ford; one on September 29, 1986 for $3,500 and one on October 13, 1986 for $9,500. On October 17, 1986, Wilgro did not appear at the proceedings supplemental hearing at which the court entered judgment in favor of Radiotelephone and against Wilgro in the principal sum of $5,388.95 plus interest of $2,884.34 and costs of $79.00.

When Radiotelephone was unable to secure payment of the judgment from Wilgro, Radiotelephone began proceedings supplemental *against Wilgro* as judgment defendant and also sought to reach money owed to Wilgro by various shopping center tenants. After a hearing on December 19, 1986 at which both Radiotelephone and Wilgro appeared by counsel, and after submission of post-hearing briefs, the trial court entered judgment for Wilgro, finding that Radiotelephone did not have a judgment against Wilgro and did not have a lien on the property of Ford in the hands of Wilgro. Radiotelephone now appeals from the denial of its motion to correct error.

## ISSUE

We address only one issue presented by Radiotelephone:

Did service to Wilgro of a summons in proceedings supplemental create a lien in favor of Radiotelephone on money owed by Wilgro to Ford?

## DECISION

PARTIES' CONTENTIONS—Radiotelephone contends that it had a lien on the money owed to Ford by Wilgro from the time Radiotelephone served on Wilgro the order to appear or answer interrogatories. Radiotelephone further argues that the trial court's refusal to enforce the judgment against Wilgro was contrary to law.

Wilgro replies that Radiotelephone failed to satisfy various statutory requirements necessary for the creation of the lien, and that the trial court was correct in determining that Radiotelephone did not have an enforceable judgment against Wilgro.

CONCLUSION—The trial court erred in determining that Radiotelephone did not have a lien on the money from the time the order to appear or answer interrogatories was served on Wilgro.

The rule today is the same as it has been for over one hundred years; a creditor acquires an equitable lien on funds owed by a third party to the judgment debtor from the time the third party receives service of process in proceedings supplemental. *Butler v. Jaffray* (1859), 12 Ind. 504, first recognized the existence of such a lien. The judgment debtors in *Butler* assigned choses in action to a third party, intending to force creditors to share pro rata in the proceeds of the assigned choses in actions. The plaintiff creditors, who had already secured a judgment in their favor against the debtors, started proceedings supplemental against the debtors and a third party. The supreme court in *Butler*, recognizing that equity aids the diligent, wrote that "the plaintiffs, by instituting their proceedings under [the proceedings supplemental] statute to reach the funds in the hands of [the third party], acquired a lien thereon, and were entitled

to have their judgment first satisfied...." *Id.* at 511. The holding in *Butler* did not arise from the language of the statutes governing proceedings supplemental, which authorized the enjoining of transfers of property only "upon the hearing." [1] Rather, the lien in favor of the creditor pursuing proceedings supplemental arose out of the equitable powers of the court. *Butler, supra.*

The supreme court reached the same result in *Graydon v. Barlow* (1860), 15 Ind. 197. Without specifying when the lien arose, the court in *Graydon* reiterated that a debtor's assignment of assets to others could not defeat a creditor's lien on funds arising out of proceedings supplemental. In another dispute between a creditor and debtor, the supreme court recognized that the lien arose in favor of the judgment creditor from the time of service of process on the judgment debtor and on third parties indebted to the judgment debtor. *Cooke v. Ross* (1864), 22 Ind. 157.

These early cases involved disputes between judgment creditors and judgment debtors and established the principle that *a debtor* could not make a valid assignment to a third party after commencement of proceedings supplemental and after creation of the lien. In *Pouder v. Tate* (1892), 132 Ind. 327, 30 N.E. 880, this principle was extended to hold a *third party* liable for funds wrongfully paid to a judgment debtor after the third party was named a defendant in proceedings supplemental. Once the lien in favor of the creditor was created, the third party "could in nowise affect that lien by any act of his without the consent of the appellee [creditor]." *Id.* at 330, 30 N.E. at 881.

Following these cases, the appellate court during this century held that the third party in proceedings supplemental is liable for paying out funds in a manner inconsistent with the judgment creditor's lien. *Union Bank & Trust Co. v. Vandervoort* (1951), 122 Ind.App. 258, 101 N.E.2d 724, *trans. denied.* In *Vandervoort*, the third party, a bank, paid out to its depositor, the judgment debtor, the entire amount in the depositor's savings account. This payment was made after the bank received service of process making it a third party defendant in proceedings supplemental. Upon receipt of the funds, the depositor immediately gave the money to his son who lived outside of the state and who was not subject to process. The appellate court held that a lien in favor of the creditor in proceedings supplemental attached at the time process was served on the bank. The bank's payment to its depositor could not affect the lien without the consent of the judgment creditor. The bank was therefore liable to the creditor as the bank was still deemed to be in custody of the money. *Id.*

If it were not for the equitable lien created at the time of service of process in proceedings supplemental, a judgment debtor could easily defeat a lien by assignment of the debt or otherwise collecting money owed him by third parties. The equitable lien is intended to preserve the property of the judgment debtor in the hands of a third party pending review and disposition by the proceedings supplemental court. The rule is implicit in the statutes and trial rule governing proceedings supplemental, whose obvious intent is to preserve the property of the debtor for satisfaction of the creditor's judgment. *See* IC 34–1–44–1 to –8; Ind. Rules of Procedure, Trial Rule 69(E). This would appear to be the rationale of *Vandervoort* and its predecessors, which recognized the many opportunities for avoidance of the debt during the inevitable delay before the proceedings supplemental hearing. The

---

**1.** The then-existing proceedings supplemental statute provided:

"Sec. 524. *Upon the hearing, the judge of the court may* order any property of the judgment-debtor, not exempt from execution, in the hands either of himself or any other person or any debt due to the judgment-debtor, to be applied to the satisfaction of the judgment, and *forbid transfers of property and choses in action,* and such judge or court shall have full power to enforce all orders and decrees in the premises, by attachment or otherwise."

2 *Indiana Revised Statutes* (1852), § 524 (presently codified as amended at Ind.Code 34–1–44–7 (1982)) (emphasis supplied).

equitable lien, while not statutory in origin, is analogous to other such liens. For example, a judgment lien protects a judgment holder's interest, vis-a-vis subsequent claimants, in the defendant's real estate after entry of judgment. *See* IC 34–1–45–1 to –5 (1982). And in the *pre* judgment setting, recourse may be had to the attachment and garnishment statutes for the purpose of preserving the defendant's property for satisfaction of any subsequent judgment for the plaintiff. *See* IC 34–1–11–1 to –49 (1982 and Supp.1987).

■ Wilgro, as the third party defendant owing money to the judgment debtor, does not allege that the service of process it received, in the form of an order to appear or answer interrogatories, was defective.[2] At the time it was named a garnishee defendant in proceedings supplemental, Wilgro was also informed of the amount of Radiotelephone's unsatisfied judgment against Ford. In its answer to interrogatories, Wilgro stated it possessed sufficient funds of Ford to satisfy the outstanding judgment and that no other garnishment order was pending regarding the funds owed to Ford. Based on these undisputed facts, we must conclude that Radiotelephone acquired a lien on the funds held by Wilgro. Wilgro received notice in the summons that a train was coming down the track, but Wilgro did not stop, look, or listen. Wilgro paid the money it owed to the judgment debtor, Ford, knowing of Radiotelephone's judgment.

■ Wilgro would limit or distinguish the binding precedent of *Vandervoort* and its predecessors by pointing to the then-existing statute controlling liens in proceedings supplemental. The controlling statute at the time of *Vandervoort* provided:

"*Upon the hearing, the judge of the court may* order any property, income or profits, of the judgment debtor, not exempt from execution, in the hands either of himself or of any other person, or any debt due to the judgment debtor, to be applied to the satisfaction of the judgment, and *forbid transfers [of] property and choses in action; and the judge may order that the judgment or execution shall be a continuing lien upon the income or profits of the judgment debtor in the hands either of himself or of any other person,* governmental officer or corporation from the date such order is served upon the person, governmental officer or corporation indebted to the judgment debtor to the extent that such income or profits are not exempted by law: *Provided,* Such lien shall not exceed ten per centum of such income or profits and shall not, when added to all similar liens prior thereto, increase the total of all such liens to a percentage greater than ten per centum of the income and profits of the judgment debtor; and such judge or court shall have full power to enforce all orders and decrees in the premises, by attachment or otherwise."

1941 Ind.Acts ch. 228, § 1, p. 803 (presently codified as amended at IC 34–1–44–7) (emphasis supplied).

Citing the emphasized statutory language above, Wilgro argues that a lien on money in the hands of a third party could only be created after a hearing and order by the court. This is precisely the issue raised by Judge Bowen in his dissent and rejected by the majority in *Vandervoort. See Vandervoort, supra* at 266, 101 N.E.2d at 728 (Bowen, J., dissenting). The statutorily conferred power to "forbid transfer [of] property" in proceedings supplemental, which was to be done "upon the hearing," was never considered to be the source of the equitable lien recognized in *Butler* and its progeny. *See* discussion *supra* at note

---

2. Wilgro also does not question, and we therefore need not discuss, whether notice of the lien was complete and clear enough to satisfy constitutional standards of due process. For a brief discussion of this question, *see* Note, *Trial Rule 69(E): Proceedings Supplemental to Execution,* 11 *Ind.L.Rev.* 873, 887–89 (1978). A better prac-

tice would have been for Radiotelephone to indicate the existence of the lien in the body of the summons. *See* 4 *W. Harvey & R. Townsend, Indiana Practice* § 69.5 at 480–81 (1971) (suggesting language to be included in the summons to inform the third party of the creation of the lien).

1. In our estimation, the amendment permitting a "continuing lien on income or profits" was intended merely to define further the court's power to impose a continuing lien after a hearing in proceedings supplemental. This "continuing lien" refers to the problem of periodic wage garnishment and exemptions thereto, and not to the court-created equitable lien. Rather, the equitable lien exists to preserve the property of the debtor only so long as is required for the proceedings supplemental court to review the matter. Thus, we perceive no conflict between the equitable lien rule and the statutory provisions concerning continuing liens in proceedings supplemental.

Wilgro protests that the holding of *Vandervoort* is limited to those situations in which banks are third party defendants in proceedings supplemental. While the third party which owed money to the judgment defendant in *Vandervoort* was a bank, this fact was not essential to the holding therein. Other cases not involving banks have followed the rule that a lien in favor of the judgment creditor exists at the time process is served on the third party. *See, e.g., Cooke, supra; Deetz v. McGowan* (1980), Ind.App., 403 N.E.2d 1160.[3]

It is true, as Wilgro points out, that some cases have looked to IC 34-1-11-21, part of the chapter regulating attachment and garnishment, for a statutory expression of the equitable lien in proceedings supplemental. *See Owens–Classic, Inc. v. Swager Tower Corp.* (1985), Ind.App., 480 N.E.2d 232, *trans. denied; Lakeshore Bank & Trust v. United Farm Bureau Mut. Ins. Co.* (1985), Ind.App., 474 N.E.2d 1024. IC 34-1-11-21, however, is not the source of the equitable lien rule in proceedings supplemental. Because of an unfortunate duplication of terms, prejudgment garnishment has become confused with the equitable lien imposed on the "garnishee" in proceedings supplemental.

The primary purpose of the garnishment statutes in chapter 34-1-11 is to preserve the property of the defendant prior to judgment and to secure any eventual recovery by the plaintiff. Garnishee proceedings in proceedings supplemental, however, are intended to subject property in the hands of a third party to payment of the judgment against the defendant. The present rules controlling garnishment and proceedings supplemental are the direct descendants of two distinct statutory sources. Attachment and garnishment, which today is found in IC 34-1-11-1 to -49, was originally codified at 2 *Indiana Revised Statutes* (1852 and 1857 amendments), §§ 156–98. Elsewhere above we have discussed the separate and distinct origin of proceedings supplemental to execution. *See* discussion *supra* at note 1. The *pre* judgment garnishment statute, which has existed since the time of *Butler, supra,* was never considered to be the source of the equitable lien in proceedings supplemental. Further, we are convinced that the prejudgment garnishment setting demands greater concern and protection for the garnishee. As such, the panoply of restrictions applicable to prejudgment attachment and garnishment proceedings is not applicable to the equitable lien arising in the present proceedings supplemental.

So we conclude that an equitable lien arose here in favor of Radiotelephone at the time process was served on Wilgro which was not defeated by the unilateral action of Wilgro. Wilgro could easily have protected itself against the threat of a double payment by depositing the disputed

---

**3.** The problem of double liability for *banks* arising in *Vandervoort* is now eliminated by the adverse claim statute at IC 28-1-20-1.1 (1982). After notice of an adverse claim, a bank is required to preserve the funds in the judgment debtor's account for a maximum period of sixty days. During the term in which withdrawals from the account are restricted, the bank is protected from liability for its failure to pay its depositor. Before a bank is required to limit withdrawals, however, the notice of the adverse claim must comply with the requirements of the statute. *See* IC 28-1-20-1.1. Notice of garnishment in proceedings supplemental has been held to be an adverse claim under the statute. *See, e.g., First Bank v. Samocki Bros. Trucking Co.* (1987), Ind.App., 509 N.E.2d 187, *trans. denied.*

funds with the court. T.R. 22; *see, e.g., Borgman v. Borgman* (1981), Ind.App., 420 N.E.2d 1261, *trans. denied* (insurer interpleaded proceeds of policy plus interest in dispute between alleged beneficiaries; trial court properly discharged insurer after funds were interpleaded).

Reversed and remanded for proceedings consistent herewith.

SHIELDS, P.J., and MILLER, J., concur.