**BOWYER EXCAVATING, INC., In the Matter of the Petition to Intervene of Bowyer Excavating, Inc., Appellant,**

v.

**COMMISSIONER, INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, RLG, Inc., Lawrence Roseman d/b/a Spring Valley Landfill and Lawrence Roseman, Wabash County, Indiana; Constance J. King; Commissioner of Indiana Department Of Environmental Management, Appellees.**

No. 85A05–9511–CV–436.

Court of Appeals of Indiana.

Oct. 15, 1996.

Donald J. Tribbett, Starr Austen Tribbett & Myers, Logansport, for Appellant.

Pamela Carter, Attorney General, Anita W. Kimmel, Deputy Attorney General, Indianapolis, for Appellee IDEM.

## OPINION

SHARPNACK, Chief Judge.

Bowyer Excavating, Inc. ("Bowyer") appeals from a prejudgment garnishment order obtained by the Indiana Department of Environmental Management ("IDEM") against RLG, Inc. ("RLG") and Lawrence Roseman d/b/a Spring Valley Landfill.[1]  In addition, Bowyer appeals from the denial of its motion to intervene.  Bowyer raises five issues for our review, which we consolidate and restate into the following two dispositive issues:

(1) whether the trial court's order for prejudgment garnishment was void for lack of subject matter jurisdiction;

(2) whether the trial court erred by staying Bowyer's writ to execute on the funds held by the trial court clerk pursuant to the court's prejudgment garnishment order.

We affirm in part, reverse in part, and remand.[2]

This case arises from two separate actions filed in the Wabash Circuit Court, the appeals of which were consolidated pursuant to the order of this court.  Both actions relate to the closure of the Spring Valley Landfill ("landfill").  The owner of the landfill, RLG, was named as a defendant in both actions.

The first action was filed by IDEM against RLG and Roseman, the president of RLG (hereinafter referred to as the "IDEM action").  The IDEM action was initiated on August 26, 1993, when IDEM filed a complaint for injunctive relief and civil penalties. The complaint alleged several violations of Indiana's environmental laws, including RLG's failure to close the landfill.  The complaint requested equitable relief remedies and an order for RLG to pay a civil penalty in the amount of $25,000 per day for each violation.  The complaint also alleged that

---

1.  Bowyer filed this action against IDEM's commissioner, RLG, Roseman, Eileen Ford, Robert M. Kramer, and Constance J. King who collectively will be referred to as "appellees".

2.  After this case was fully briefed, Bowyer filed a motion to substitute a corrected page 11 its brief. We now grant this motion.

Roseman was personally liable for RLG's action.

On October 28, 1993, IDEM and RLG entered into an agreement relating to the activities of the landfill. Soon after, IDEM alleged that RLG failed to comply with the agreement and, as a result, filed several motions for prejudgment relief. One of the motions was for prejudgment garnishment, which alleged that a nonparty, Republic Waste Industries, Inc. ("Republic Waste"), was in possession of a sum of money belonging to RLG.

On May 5, 1994, the trial court granted IDEM's motion for prejudgment garnishment and directed Republic Waste to pay those sums held on behalf of RLG to the clerk of the Wabash Circuit Court ("clerk") until further order. Later, Republic Waste deposited $250,000 with the clerk.

The second action arose on April 20, 1994, when Bowyer filed its complaint for damages and to foreclose a mechanic's lien against RLG, IDEM, and other defendants not relevant to this appeal (hereinafter the "Bowyer action"). This complaint alleged that Bowyer had not been compensated for work performed in connection with RLG's effort to close the landfill. The complaint sought the alleged outstanding $40,187.05 balance owed to Bowyer. On May 17, 1994, IDEM entered its appearance. Although RLG was served, it failed to answer the complaint and, as a result, the Bowyer court[3] entered a default judgment against RLG in favor of Bowyer for a sum of $47,194.53.

Bowyer then attempted to collect its judgment in two ways. First, Bowyer filed a petition for leave to intervene in the IDEM action. In its petition, Bowyer claimed it had an interest in the $250,000 fund held by the clerk. Bowyer requested that it be permitted to intervene as a matter of right to protect its interest in the fund. This motion was later denied by the IDEM court on August 17, 1995.

Second, in its own action, Bowyer initiated collection efforts, which eventually resulted in the filing of proceedings supplemental on March 6, 1995. As part of these proceedings, Bowyer sent interrogatories to Republic Waste and the clerk to ascertain the manner in which the money was ordered by the IDEM court to be forwarded to the clerk.

On April 21, 1995, the Bowyer court conducted a hearing on Bowyer's proceedings supplemental. At the hearing, Bowyer argued that the IDEM court lacked subject matter jurisdiction to order the garnishment, which resulted in the $250,000 deposit to the clerk, and that the order was void. In addition, Bowyer argued that it was entitled to collaterally attack the garnishment order because it was not given the opportunity to contest the garnishment order in the IDEM action. Next, Bowyer argued that it had a valid lien against the fund because it filed proceedings supplemental and because it served interrogatories on the clerk. Finally, Bowyer concluded that because the IDEM court's garnishment order was void, Bowyer was the only party holding a valid lien on the $250,000 fund and, therefore, that its $47,-194.53 judgment should be satisfied from the fund. On June 15, 1995, the Bowyer court ordered that Bowyer's request for execution on the fund be stayed and that the funds be subject first to IDEM's liens and then to Bowyer's lien.

On July 12, 1995, Bowyer filed a motion to correct error as to its request for execution. This motion was denied. Bowyer now appeals both the denial of its request for execution by the Bowyer court and the denial of its motion to intervene by the IDEM court.

I.

▮ The first issue for our review is whether the IDEM court's order for prejudgment garnishment is void for lack of subject matter jurisdiction. Subject matter jurisdiction refers to a court's power to hear and determine a general class or kind of case. *State ex rel. Hight v. Marion Super. Ct.,* 547 N.E.2d 267, 269 (Ind.1989). The absence of subject matter jurisdiction renders a judgment void. *Id.* Void judgments

3. Because both actions were filed in the Wabash Circuit Court, we will refer to the court deciding matters in the IDEM action as the "IDEM court" and refer to the court deciding matters in the Bowyer action as the "Bowyer court."

can be attacked directly or collaterally at any time. *Id.; Santiago v. Kilmer,* 605 N.E.2d 237, 239 (Ind.Ct.App.1992), *reh 'g denied, trans. denied.* The issue of subject matter jurisdiction may be resolved by determining whether the claim involved falls within the general scope of authority conferred on a court by the Indiana Constitution or by statute. *Hight,* 547 N.E.2d at 267.

Bowyer does not contest that the IDEM court had subject matter jurisdiction over IDEM's suit against RLG. Rather, Bowyer argues that the IDEM court lacked subject matter jurisdiction to order the prejudgment garnishment of the $250,000 held by Republic Waste and, therefore, that the order is open to collateral attack.

■ During the hearing on Bowyer's supplemental proceedings, IDEM argued that the prejudgment garnishment order was valid based on three legal authorities: Ind.Code § 34–1–11–1 *et. seq.,* Ind. Trial Rule 64(B)(1) and T.R. 64(B)(3). Because IDEM contended that the order was not void, it concluded that Bowyer could not collaterally attack it. In staying Bowyer's request for execution against the $250,000, the Bowyer court did not indicate whether it upheld the order because a collateral attack was inappropriate or because the order was valid on its face. Bowyer now challenges each of the three bases identified by IDEM in support of its argument that the prejudgment garnishment order was proper.[4]

### A. *I.C. § 34–1–11–1 et. seq.*

■ Prejudgment attachment and garnishment are governed by I.C. § 34–1–11–1 *et. seq.* An "attachment" is "the legal process of seizing another's property in accordance with a writ or judicial order for the purpose of securing satisfaction of a judgment yet to be rendered." BLACK'S LAW DICTIONARY 126 (6th ed. 1990). Attachment

proceedings are governed by I.C. § 34–1–11–1 through I.C. § 34–1–11–19.

A "garnishment" is "a proceeding whereby a plaintiff creditor, *i.e.,* garnishor, seeks to subject to his or her claim the property or money of a third party, *i.e.,* garnishee, owed by such party to defendant debtor...." BLACK'S LAW DICTIONARY 680 (6th ed. 1990); *see Lakeshore Bank & Trust v. United Farm Bureau,* 474 N.E.2d 1024, 1026 (Ind.Ct.App. 1985). The authority to seek a garnishment is set forth by I.C. § 34–1–11–20.

The parties dispute whether the prejudgment possession here constituted an attachment or a garnishment and also dispute whether there is any distinction between the two. However, the statute sets forth separate requirements for each. Thus, an attachment applies when the plaintiff seeks to attach "the property of the defendant," I.C. § 34–1–11–1, and a garnishment applies where a third party possesses or controls the defendant's property. I.C. § 34–1–11–20.

■ We find any technical distinction between the two to be irrelevant for our review. We also find irrelevant the appellees' claim that the IDEM court actually intended an "attachment" of RLG's property. In its order, the IDEM court clearly sought to seize defendant-RLG's property which was held by a third party; "the Plaintiff is granted prejudgment attachment of those sums held by the Garnishee defendant, Republic Waste Industries on behalf of the Defendant RLG, Inc. or RLG Corporation." Record, p. 71. Therefore, we turn to that part of the statute governing garnishments.

■ Ind.Code § 34–1–11–20 provides in part that "[i]n all personal actions arising upon contract, express or implied, or upon a judgment or decree of any court," the plaintiff can file an affidavit with the court indicating that the person named in the affidavit possesses or controls the defendant's proper-

---

4. The appellees suggest that Bowyer has no standing to attack the prejudgment order. The appellees contend that "only the defendant may be heard to complain of any irregularities or defects in the attachment proceeding," appellees' brief, p. 8, and cite *Earl v. Matheney,* 60 Ind. 202 (1877) in support. However, the appellees provide neither facts from *Earl* to demonstrate its

applicability nor a developed argument, in violation of App.R. 8.3(A)(7). *See Martin Chevrolet Sales, Inc. v. Dover,* 501 N.E.2d 1122, 1128 (Ind. Ct.App.1986) (holding that the failure to elaborate with more than a one sentence conclusory assertion is not a cogent argument). Therefore, we need not address the merits of this issue.

ty. I.C. § 34–1–11–20. Because the suit filed by IDEM against RLG did not arise upon a contract, this section is inapplicable.[5] Therefore, the IDEM court did not have statutory authority to enter the order for attachment.

### B. *T.R. 64(B)(1)*

■ Next, the parties dispute whether T.R. 64(B)(1) provided the trial court the jurisdiction to enter its order. This rule provides as follows:

(B) **Attachment or attachment and garnishment.** "Attachment or attachment and garnishment shall be allowed in the following cases in addition to those where such remedies prior to judgment are now permitted by law:

(1) It shall be a cause for attachment that the defendant or one of several defendants is a foreign corporation, a nonresident of this state, or a person whose residence and whereabouts are unknown and cannot be determined after reasonable investigation before the commencement of the action."

T.R. 64(B)(1). With respect to this trial rule, Bowyer's sole argument is that T.R. 64(B)(1) is inapplicable "inasmuch as the funds in question were in the hands of a nonparty and therefore required a garnishment and not an attachment.... Any extension of [the rule] to garnishments would require a rewriting of the rule...." Appellant's brief, pp. 16–17.

As the appellees point out, however, the introductory sentence of T.R. 64(B) indicates that the provisions for "attachment or attachment and garnishment" shall be allowed "in the following cases." T.R. 64(B). One of those "cases" is where the defendant is a foreign corporation, a nonresident of this state, or a person whose residence and whereabouts are unknown. T.R. 64(B)(1).

Thus, nothing in the rule prevents its provisions from applying to garnishments, as well as attachments. Because RLG is a Pennsylvania corporation and Roseman is a California resident, the requirements of the rule are satisfied. Therefore, the IDEM court had the authority to enter the prejudgment garnishment order pursuant to this rule.

### C. *T.R. 64(B)(3)*

■ Finally, the parties dispute whether T.R. 64(B)(3) granted the IDEM court the authority to enter its order. This rule allows for attachment or attachment and garnishment where the plaintiff is suing "upon a claim for money, whether founded on contract, tort, equity or any other theory and whether it is liquidated, contingent or unliquidated; or upon a claim to determine the rights in the property or obligation attached or garnished." T.R. 64(B)(3). Specifically, the parties dispute whether IDEM's complaint constituted "a claim for money."

Bowyer argues that IDEM sought "civil penalties," which Bowyer argues does not constitute a "claim for money." Bowyer recognizes that there is no Indiana authority addressing this issue, but nonetheless argues that a civil penalty is a fine and that a civil penalty has "no relationship to actual damages and [is] not intended as compensation." Appellant's brief, p. 18. Therefore, Bowyer concludes that T.R. 64(B)(3) does not apply.

■ As the appellees note, Bowyer's position presumes that "money," as used in the rule, means a claim for damages. From that presumption, Bowyer concludes that because a civil penalty is intended as a punishment rather than as damages, the rule does not apply to IDEM's action. However, we find both that Bowyer failed to provide a persuasive argument[6] and that its interpre-

5. While appellees indicate that "[w]ere there any merit to Bowyer's artificial distinction between attachment and garnishment, IDEM would maintain that the attachment order was in aid of a court order," they did not otherwise provide a cogent argument in support of this point. Appellee's brief, p. 5, n. 2. Therefore, we need not address it further. *See* Ind. Appellate Rule 8.3(A)(7).

6. The appellees take issue with the fact that Bowyer failed to provide any authority for its contention that an action for civil penalties does not constitute "a claim for money" under the rule. The appellees suggest that the argument is waived because Bowyer failed to provide authority pursuant to App.R. 8.3(A)(7). Generally, the failure to provide adequate citation to authority would waive the argument raised. *Berger v. Berger*, 648 N.E.2d 378, 381 (Ind.Ct.App.1995). When the argument presented is a novel one,

tation contradicts the language of the rule which allows an attachment and garnishment upon "a claim for money . . . [on] any other theory. . . ." T.R. 64(B)(3). An action seeking a civil penalty, i.e., money, for failure to comply with environment regulations would appear to fit squarely within the terms of this broad rule. *See* 4 Harvey, Indiana Practice Sec. 64.7 at 349 (1991) (indicating that the effect of T.R. 64(B)(3), which permits attachment and garnishment upon a "claim for money," is to broaden the scope of I.C. §§ 34–1–11–1, 34–1–11–20 "in all actions where a recovery in money is sought"). Therefore, the IDEM court properly entered an order pursuant to this rule.

In sum, the IDEM court had subject matter jurisdiction to enter the prejudgment garnishment order pursuant to T.R. 64(B)(1) and 64(B)(3). Therefore, the prejudgment order is not void. *See Hight,* 547 N.E.2d at 269.

## II.

■ The second issue for our review is whether the Bowyer court erred in denying Bowyer the first priority to execute on the $250,000 fund. Bowyer claims that even if the IDEM court properly garnished the money to establish a fund, the garnishment did not establish a lien in favor of appellees. Rather, Bowyer maintains the fund remained open to the claims of other creditors, including itself. Finally, Bowyer argues that because the appellees failed to establish a lien and because it was the only party possessing a valid lien, the Bowyer court erred by denying it first priority to execute on the fund.

The appellees urge that the prejudgment garnishment order created a lien in their favor and cite *First National Bank of Kendallville v. Stanley,* 4 Ind.App. 213, 30 N.E. 799, 801 (1892) for support. In *Stanley,* the bank attempted to satisfy its judgment against Milton Stanley from funds held by the clerk pursuant to a writ of attachment in favor of Charles and William Clapp. In de-

nying the bank's writ of execution, this court held that:

"The writ of attachment became a lien upon and bound Stanley's property . . . subject to execution from the time of its delivery to the sheriff. The levy under the writ placed the property in the custody of the court, and prevented its seizure under other writs. . . . During that time the writ of attachment was a lien upon the money. . . . This money was all the time in the custody of the law, and could not be taken therefrom by the [bank's] execution. . . . The [bank's] execution not having been issued until after the writ of attachment was delivered to the sheriff, it can have no priority. . . ."

*Id.* (citations omitted).

■ However, we have previously distinguished prejudgment garnishment orders from garnishee proceedings in proceedings supplemental. *See Radiotelephone Co. v. Ford,* 531 N.E.2d 238, 243 (Ind.Ct.App.1988). During a garnishee proceeding in proceedings supplemental, the creditor acquires an "equitable lien" on funds owed by a third party to the judgment debtor from the time the third party receives service of process in the proceedings supplemental. *Id.* at 240. In *Radiotelephone,* we distinguished the equitable lien acquired in proceedings supplemental from a prejudgment garnishment order like the one present here:

"It is true . . . that some cases have looked to IC 34–1–11–21, part of the chapter regulating attachment and garnishment, for a statutory expression of the equitable lien in proceedings supplemental. *See Owens–Classic, Inc. v. Swager Tower Corp.* (1985), Ind.App., 480 N.E.2d 232, *trans. denied; Lakeshore Bank & Trust v. United Farm Bureau Mut. Ins. Co.* (1985), Ind.App., 474 N.E.2d 1024. IC 34–1–11–21, however, is not the source of the equitable lien rule in proceedings supplemental. Because of an unfortunate duplication of terms, prejudgment garnishment has become confused with the equitable lien

---

however, the argument is not waived for failing to cite authority. *See Yin v. Society Nat'l Bank,* 665 N.E.2d 58, 62 (Ind.Ct.App.1996), *reh 'g denied* (issue is not waived for failure to cite au-

thority because no Indiana court directly addressed the issue before). Nonetheless, we are unpersuaded by the limited argument that Bowyer presents on its behalf.

imposed on the 'garnishee' in proceedings supplemental.

The primary purpose of the garnishment statutes in chapter 34–1–11 is to preserve the property of the defendant prior to judgment and to secure any eventual recovery by the plaintiff. Garnishee proceedings in proceedings supplemental, however, are intended to subject property in the hands of a third party to payment of the judgment against the defendant. The present rules controlling garnishment and proceedings supplemental are the direct descendants of two distinct statutory sources.... The prejudgment garnishment statute ... was never considered to be the source of the equitable lien in proceedings supplemental. Further, we are convinced that the prejudgment garnishment setting demands greater concern and protection for the garnishee. As such, the panoply of restrictions applicable to prejudgment attachment and garnishment proceedings is not applicable to the equitable lien arising in the present proceedings supplemental."

*Id.; see McClure Oil Corp. v. Whiteford Truck Lines,* 627 N.E.2d 1323, 1325 n. 1 (Ind.Ct.App.1994).

The mere fact that the appellees obtained a prejudgment order did not create a lien in their favor. Until the time that the appellees reduced their claim to a judgment and initiated proceedings supplemental, they did not possess a lien.[7] *See Radiotelephone,* 531 N.E.2d at 240. As such, Bowyer possessed the only valid lien against the garnished funds. Therefore, the Bowyer court erred by staying Bowyer's writ of execution on the fund.[8]

For the foregoing reasons, we affirm the jurisdiction of the IDEM court to enter a prejudgment garnishment order, reverse the stay of Bowyer's writ of execution on the funds as entered by the Bowyer court, and remand this case to the Bowyer court for further proceedings not inconsistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

BAKER and RUCKER, JJ., concur.

---

7. In their brief, the appellees claim that on January 30, 1996, IDEM received a default judgment against RLG for $3,175,000 and that the IDEM court ordered the clerk to pay IDEM the $250,000 at issue here in partial satisfaction of that judgment. Because the record of proceedings was filed with this court in November of 1995, the record does not support such an assertion. However, even assuming that IDEM obtained a default judgment, it did not do so until after Bowyer had filed proceedings supplemental.

8. Finally, we note that Bowyer also appealed the IDEM court's denial of its motion to intervene the IDEM action as a matter of right pursuant to T.R. 24(A)(2). Bowyer maintained that had it been allowed to intervene, it could have presented its challenge to the validity of the prejudgment garnishment order. Because we have already addressed Bowyer's claims, we need not reach the merits of this issue.