**FARMERS STATE BANK OF MENTONE, INC., Plaintiff,**

v.

**UNITED STATES of America, INTERNAL REVENUE SERVICE, Defendant.**

**No. 3:96–CV–812RM.**

United States District Court, N.D. Indiana, South Bend Division.

Nov. 25, 1998.

J. Richard Ransel, Thorne, Grodnik, Ransel, Duncan, Byron and Hostetler, Elkhart, IN, for Plaintiff.

Clifford D. Johnson, Office of the United States Attorney, South Bend, IN, Gerald H. Parshall, Jr., U.S. Dept. of Justice, Washington, DC, for Defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Plaintiff Farmers State Bank of Mentone loaned money to Sellers Motor Corporation, which in turn kept two deposit accounts at the plaintiff's bank. Sellers defaulted; Farmers State Bank demanded payment in full for all indebtedness and took possession of the collateral that secured the loan. Thereafter, the Internal Revenue Service seized Sellers's accounts held by the bank to pay federal taxes that Sellers owed. The bank brought this suit to recover the funds, arguing that its position with regard to the balance of Sellers's account is superior to the IRS's position. Both parties seek summary judgment. For reasons set forth below, the court grants the IRS's summary judgment motion and accordingly denies the bank's motion.

## I. BACKGROUND[1]

Sellers Motor Corporation failed to pay certain federal payroll and unemployment taxes during 1995 and 1996. The IRS assessed the delinquent taxes and gave Sellers notice of the assessments on four separate occasions between February and May 1996.

Because Sellers had not paid the assessed taxes, the IRS acquired federal tax liens, which it filed with the Kosciusko County recorder's office on May 13 and 17, 1996. In the meantime, Sellers also had defaulted on its loan with Farmers State Bank of Mentone; the bank demanded, on May 24, 1996, payment in full on all of Sellers's indebtedness, which amounted to $210,256.98. The bank also demanded that Sellers turn over all collateral related to its loan with the bank, and Sellers complied with this request.

On June 14, 1996, the IRS served the bank with a notice of levy for Sellers's two accounts held by the bank. Sellers's account number 9524927 then had a balance of $2,647.78 and account number 9523915 then had a balance of $35,811.18. The bank protested the levy, but turned over the balance of Sellers's accounts after the IRS served its final demand. Before turning over the balance of the accounts, the bank had not exercised its right to set-off the amounts owed it by Sellers with the accounts. Indeed, after Sellers defaulted and the bank demanded payment on May 24, 1996, the bank allowed Sellers to write several checks on account number 9523915. The bank did not freeze account number 9524927, although nothing in the record indicates that Sellers tried to withdraw from that account after it defaulted.

## II. ANALYSIS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) "mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the exis-

1. District Rule 56.1 describes the procedure by which the parties present their version of the facts for summary judgment purposes. First, the moving party provides a statement of genuine issues, which is comprised of all material facts that the moving party contends are not in dispute. The moving party must support these facts with appropriate citations to admissible evidence. The court assumes that the facts asserted by the moving party are undisputed, except to the extent that such facts are controverted in the opposing party's statement of genuine issues. The opposing party's statement of genuine issues similarly must be supported by appropriate citation to admissible evidence. From these statements of genuine issues, the court gleans the facts that are not in controversy. In the present case, Farmers State Bank has not disputed any of the facts provided by the IRS, so the court assumes that these facts are undisputed.

tence of an essential element to that party's case, and on which the party will bear the burden of proof at trial." "Where the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

Although the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. Rule 56(e) requires that the nonmoving party who bears the burden of proof on an issue allege specific facts showing that there is a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories, and admissions on file. ...

In considering whether there are any genuine issues of material fact, we view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Where a fact is disputed, the nonmoving party must show that the disputed fact is material under the applicable law. The applicable law will dictate which facts are material. Only disputes that could affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

*National Soffit & Escutcheons, Inc. v. Superior Sys., Inc.*, 98 F.3d 262, 264–265 (7th Cir.1996) (citations omitted).

▮ The United States acquired a lien on all of Sellers's property and rights to property, arising as of the date the IRS assessed Sellers's payment of unpaid taxes, 26 U.S.C. §§ 6321–6322. Federal tax laws create no property rights, but rather only determine the federal consequences of a state-created right. Thus, the court looks to Indiana law to determine the nature of the right that

Sellers had in its bank accounts, then applies federal law to determine whether the state-created right amounts to "property" or "rights to property." *United States v. Librizzi*, 108 F.3d 136, 137 (7th Cir.1997). The parties do not dispute that Sellers's right to withdraw from the accounts held by Farmers State Bank amounts to a right to property in which the United States acquired a lien when it assessed taxes against Sellers on February 12, 1996. Nor do the parties dispute that federal law determines the priority between the United States's lien on Sellers's property rights to the accounts and Farmers State Bank's interest in the account.

Under federal law, if the bank acquired a "security interest" (as defined by the Internal Revenue Code) in the property before the United States filed its notice of tax lien, the bank prevails as against the United States. *See* 26 U.S.C. § 6323(a); *Jersey State Bank v. United States*, 926 F.2d 621 (7th Cir.1991). The pertinent portion of the definition of security interest requires the court to determine whether the bank's interest was "protected under local law against a subsequent judgment lien arising out of an unsecured obligation." 26 U.S.C. § 6323(h)(1)(A). Thus, the court returns to state law to determine the bank's interest in Sellers's accounts.

The bank offers three alternatives regarding its interest in Sellers's accounts. First, the bank asserts that, as a creditor of Sellers, it had the right to set-off any amounts Sellers owed with the funds in the accounts; second, the bank claims that it has a contractual security interest in Sellers's bank accounts; and third, the bank argues that because the funds in account number 9523915 constitute proceeds of accounts receivable, it has a contractual security interest in that account.

The bank claims the right of set-off based on the following language contained in its loan agreement with Sellers:

RIGHTS OF SETOFF. Borrower grants to Lender a contractual possessory security interest in, and hereby assigns, conveys, delivers, pledges, and transfers to Lender all Borrower's right, title and interest in and to, Borrower's accounts with Lender (whether checking, savings, or some other

account), including without limitation all accounts held jointly with someone else and all accounts Borrower may open in the future, excluding however all IRA, Keogh, and trust accounts. Borrower authorized Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

Indiana law governs the extent that set-off is permitted.

▉ Under Indiana common law, a bank has a right to set-off amounts owed by a depositor against funds in the depositor's account. The Indiana Supreme Court has described the basis for the bank's right to set-off as follows:

Money deposited in a general account becomes the property of the bank; the depositor becomes the bank's creditor to the extent of the deposit. When the depositor becomes indebted to the bank, a mutual debtor-creditor relationship arises that justifies a bank's right of set-off, i.e., a self-help devise for extinguishing mutual debts. The right arises by operation of law, and is founded both on the fairness and on the nature of the bank deposit which permits the depositor to erase any mutual indebtedness by his withdrawal.

*Citizens Nat. Bank v. Mid-States Dev. Co.*, 177 Ind.App. 548, 380 N.E.2d 1243, 1248, 1249 n. 8 (Ind.App.1978). Moreover, the Indiana courts explicitly have recognized that the "bank's right to set-off is superior to the equitable lien of a judgment creditor...." *First Bank of Whiting v. Samocki Bros. Trucking Co.*, 509 N.E.2d 187, 199 (Ind.Ct. App.1987). A bank can waive its right to set-off, however, if it treats the depositor's assets inconsistent with the right of set-off. *Id.* at 199. "There may be several ways for a bank to waive its right of set-off, but the most obvious is when a bank, after service of garnishment, allows its depositor to withdraw funds from the account and honors checks drawn on the account." *Id.* Thus, under Indiana law, a bank can acquire an interest in the depositor's accounts that is superior to a subsequent unsecured creditor's interest, but the bank can waive that interest, thus

losing its position in relation to the subsequent unsecured creditor.

▉ It is undisputed that Sellers had rights to its accounts even after defaulting on its loans and after Farmers demanded payment in full and delivery of collateral securing the loan. The Bank "froze" neither of Sellers's accounts after Sellers defaulted; indeed, twelve checks cleared account number 9523915 after the default. The bank's branch manager only "froze" Sellers's accounts after Internal Revenue Service officer Ernest Piotrowski served a notice of levy on the bank on June 14, 1996. On June 21, the bank's lawyer indicated to Mr. Piotrowski that the bank intended to exercise its right to set-off, but after the bank was served with a final demand to enforce the notice of levy, the bank turned over the balance of Sellers's accounts to the Internal Revenue Service. A principal of Sellers, Karen Sellers, indicated that to her knowledge, the bank had not used the funds in Sellers's accounts to off-set the amounts owed, and the bank offers no evidence to the contrary. Given that more than two months had passed between the Sellers's default on its obligations to the bank until the bank turned over the money in Sellers's accounts to the I.R.S., the bank waived its right to off-set the debt owed by Sellers with the amounts in accounts number 9524927 and number 9523915. The right having been waived, Indiana law would not protect the bank from subsequent unsecured creditors. As such, the bank did not have a security interest, as that term is defined by federal law, in its right to set-off.

▉ Farmers State Bank next argues that it has a contractual security interest in Sellers's accounts by virtue of the security agreement. The bank's argument appears to be that because the loan agreement's language appears to grant the bank a security interest in Sellers's accounts, the bank has a perfected security interest that takes priority over the United States's lien. As the government correctly points out, however, Indiana's version of the Uniform Commercial Code explicitly provides that the statute does not apply to bank accounts. IND.CODE § 26-1-9-104(k) ("This article does not apply ... to a transfer in whole or in part of ... any depos-

it, savings, passbook or like account maintained with a bank...."). As the Indiana Court of Appeals recognized when confronted with the same argument, "Whatever right Bank has in Region's accounts, it is clearly not a security interest." *First Bank of Whiting v. Samocki Bros. Trucking Co.*, 509 N.E.2d 187, 197 (Ind.Ct.App.1987). Thus, Indiana law would not protect the bank against a subsequent unsecured creditor on the basis of the bank having a contractual security interest in Sellers's accounts.

 Last, Farmers asserts that it has a contractual security interest in account number 9523915 because that account consists entirely of the proceeds of Sellers's accounts receivable. The government does not dispute that Indiana law recognizes that a creditor can acquire a continuously perfected security interest in proceeds of accounts receivable, but asserts that the bank has offered no evidence to support its claims that account number 9523915 consists of proceeds of Sellers's accounts receivable.

Indiana Code § 26–1–9–306 defines proceeds as "whatever is received upon the sale, exchange, collection, or other disposition of collateral or proceeds." An account is "any right to payment for goods sold or for services rendered which is not evidenced by an instrument or chattel paper...." IND.CODE § 26–1–9–106. No evidence in the record demonstrates that Sellers sold goods or services on account, thus creating the right to accounts receivable, and that Sellers then sold its right to accounts receivables, thus generating proceeds of accounts receivable. All evidence in the record indicates that the deposits into account number 9523915 were merely "receipts" and not the proceeds of Sellers's accounts receivable. Without evidence supporting its claim that account number 9523915 consists entirely of the proceed of accounts receivable, the bank cannot maintain its claim that it has a contractual security interest in the account.

Since the record would not allow a trier of fact to find that the bank has a security interest, as defined by federal law, in Sellers's accounts, Farmers State Bank cannot avail itself of 26 U.S.C. § 6323(a) to take priority over the United States's federal tax liens and cannot succeed on its summary judgment motion. Because the bank has failed to establish that the United States's levy of Sellers's accounts was improper, the court grants the United States's motion for summary judgment.

### III. CONCLUSION

For the foregoing reasons, the court

(1) DENIES the plaintiff's motion for summary judgment (filed July 30, 1997(# 14));

(2) GRANTS the defendant's motion for summary judgment (filed September 26, 1997(# 23)); and

(3) DIRECTS the clerk to enter judgment in favor of the defendant, terminating this cause.

SO ORDERED.