FIFTH THIRD BANK, Appellant,

v.

PEOPLES NATIONAL
BANK, Appellee.

No. 49A02–0908–CV–753.

Court of Appeals of Indiana.

June 9, 2010.

Mark R. Wenzel, Libby Y. Mote, Alicia Mitchell Chandler, Krieg DeVault, LLP, Indianapolis, IN, Attorneys for Appellant.

Steven L. Yount, Steven J. Kasyjanski, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### *STATEMENT OF THE CASE*

Fifth Third Bank ("Fifth Third") appeals the trial court's judgment in proceedings supplemental in favor of People's National Bank ("PNB").

We reverse and remand with instructions.

### *ISSUE*

Whether Fifth Third waived its right to enforce its security interest with respect to its indebted depositor's checking account and proceeds held therein.

### *FACTS* [1]

In 2005 or early 2006, Odle, McGuire & Shook ("OMS") [2] opened deposit account(s) with Fifth Third. OMS maintained the deposit account(s) at all times relevant for our purposes. It is undisputed that the deposit account(s) contained proceeds from OMS' accounts receivable and other funds. On July 8, 2005, OMS entered into written

1. We heard oral argument in this matter on April 21, 2010. We thank counsel for their able presentations.

2. OMS is an Indiana- and Florida-based architectural firm.

security agreement[3] with Fifth Third to secure over $1.5 million in loans. In the security agreement, OMS granted to Fifth Third a security interest in all of its assets including

> [a]ll Accounts, all Inventory, all Equipment, all General Intangibles ... [a]ll instruments, chattel paper, ... cash, ... and the proceeds thereof, ... and *any deposit accounts of [OMS] with [Fifth Third],* including all demand, time, savings, passbook or other accounts and all deposits therein.

(App.2, 78–79) (emphasis added). On August 5, 2005, Fifth Third perfected its security interest by filing a financing statement covering "all assets, ... accounts, ... deposit accounts, ... and proceeds thereof" with the Office of the Secretary of State. (App.2, 85).

OMS subsequently defaulted on its loans with Fifth Third for its "failure to make payments when due." (App.47). Fifth Third initiated an action seeking to collect on certain promissory notes and to enforce its security interest in OMS' collateral, including its deposit account(s) and proceeds held therein.[4] Through April of 2009, OMS continued to conduct business operations, and Fifth Third honored OMS' checks drawn on the deposit account in the amount of at least $65,000.00.

By November 11, 2007, OMS had defaulted on a lease agreement with PNB, and a lawsuit was filed by PNB for breach of the lease. On November 25, 2008, PNB received a default judgment against OMS in the amount of $63,689.50, plus post-judgment interest, court costs, and attor-ney's fees. Thereafter, PNB sought to collect on its judgment by attaching funds, if any, in OMS' Fifth Third deposit account(s). On December 16, 2008, PNB initiated proceedings supplemental against OMS. On December 30, 2008, PNB issued its first notice of garnishment proceedings, wherein Fifth Third was named as a garnishee defendant and was ordered by the court to place a 90–day hold on OMS' deposit account(s), if any such accounts existed. PNB also served garnishment interrogatories on Fifth Third, inquiring as to whether OMS maintained any deposit account(s) at Fifth Third.

On January 16, 2009, Fifth Third submitted interrogatory answers ("original interrogatory answers") stating that OMS maintained "no [deposit] accounts" with Fifth Third. (App.30). On April 7, 2009, the trial court conducted a proceedings supplemental hearing. During the hearing, OMS president Matthew Mayol acknowledged in open court that OMS had, in fact, maintained deposit account(s) at Fifth Third since "[a]pproximately 2005 or early 2006." (Tr. 11). He also testified that Fifth Third had instituted a freeze on $150,000.00 in OMS' deposit account(s).

On April 8, 2009, PNB issued a second notice of garnishment proceedings, again naming Fifth Third as a garnishee defendant. PNB served Fifth Third with a second set of interrogatories. On April 16, 2009, Fifth Third tendered interrogatory answers to the second set of interrogatories, wherein it identified a checking ac-

---

**3.** A "security agreement" is "an agreement that creates or provides for a security interest." I.C. § 26–1–9.1–102(a)(73). A "security interest" is "[a] property interest created by agreement or by operation of law to secure a performance of an obligation (esp. repayment of a debt)." Black's Law Dictionary 1387 (8th ed. 2004).

**4.** The specific date(s) of OMS' default(s) on its various loans from Fifth Third are unclear from the record, as is the exact date on which Fifth Third initiated suit; however, this information is not essential for our disposition of the claims raised herein.

count in OMS' name with an account balance of approximately $64,000.00.

On May 11, 2009, another division of the Marion County Superior Court entered a final agreed judgment in favor of Fifth Third for $1.5 million against OMS for its default on the loan agreements. On May 18, 2009, Fifth Third filed an amended set of answers to the second set of interrogatories which stated that (1) OMS had a checking account at Fifth Third with a balance of approximately $470,000.00; (2) that Fifth Third had perfected a security interest in all of OMS' assets, including all deposit account(s) and proceeds therein; and (3) that OMS' account(s) were also subject to two federal tax liens totaling approximately $1.2 million. The hearing was continued to May 26, 2009.

On May 26, 2009, the trial court reconvened the hearing on proceedings supplemental and ordered the parties to submit briefs regarding priority of liens. The parties tendered their briefs on June 15, 2009. On July 15, 2009, the trial court entered a final order in attachment ("garnishment order") wherein it ordered Fifth Third to turn over to PNB sufficient funds from OMS' deposit account(s) to satisfy PNB's judgment. The trial court's order provides, in pertinent part, the following:

> The Court's file reflects return of Interrogatories from Fifth Third Bank showing "no account." [OMS president] Matthew R. Mayol testified in open Court that [OMS] had in fact an open account with Fifth Third Bank.
>
> It appearing to the Court that [PNB] has heretofore recovered a judgment against [OMS] in the sum of Sixty–Three Thousand Six Hundred Eight–Nine Dollars and Fifty Cents ($63,-689.50) plus Court Costs and post-judgment interest, such Judgment dated No-vember 25, 2008; that an execution against [OMS] has been returned wholly or partially unsatisfied.
>
> The Court takes Judicial notice that Fifth Third Bank has filed their Amended Answers to Interrogatories showing [OMS] having a Checking Account Number: [xxxxxx]0109. There being held an amount of Sixty–Three Thousand Six Hundred Eighty–Nine Dollars and Fifty Cents ($63,689.50). Such amount being subject to execution.
>
> And the Court having heard the evidence and being otherwise duly advised now finds that the facts set out in [PNB's] petition are true, and that [PNB] is entitled to recover of and from said Fifth Third Bank, the bank account of [OMS] the amount required to satisfy said judgment and costs with interest, until same is fully paid and satisfied.

(App.3–4). Fifth Third now appeals.

Additional facts will be provided as necessary.

### DECISION [5]

#### 1. *Priority*

Fifth Third asserts that the trial court erred in issuing its final order in attachment in favor of PNB. Specifically, it argues that OMS' deposit account(s) should not have been subject to attachment in proceedings supplemental because (1) prior to PNB obtaining its judgment, Fifth Third had properly perfected its security interest in OMS' deposit account(s) and all proceeds therein; and (2) that Fifth Third's perfected security interest took priority over PNB's judgment lien. PNB concedes that Fifth Third "may have had a perfected security interest in the deposit

---

5. The parties do not dispute that this matter is governed by Indiana's Uniform Commercial Code, i.e., Indiana Code Section 26–1–9.1–101 *et seq.*

account," [6] but asserts that Fifth Third waived its security interest in the deposit account(s) by its conduct with respect to Fifth Third's failure to truthfully answer PNB's interrogatories. PNB's Br. at 1.

### a. *Standard of Review*

Proceedings supplemental are designed as a remedy where a party fails to pay a money judgment. The proceedings are merely a continuation of the underlying claim, initiated under the same cause number for the sole purpose of enforcing a judgment. These proceedings "serve the limited purpose of determining whether an asset is in the judgment debtor's possession or subject to the judgment debtor's control and can be attached to satisfy the judgment."

Our system vests trial courts with broad discretion in conducting proceedings supplemental. "[I]n proceedings supplemental, we are constrained to treat a trial court's judgment as being general only." We will not disturb a trial court's judgment regarding a proceedings supplemental unless the record does not provide sufficient support for any theory on which the judgment may be sustained. *Illinois Founders Ins. Co.* [*v. Horace Mann Ins. Co.*], 738 N.E.2d [705,] 708 [ (Ind.Ct.App.2000) ]; cf. [*Commercial Credit Counseling Services, Inc.*] *v. W.W. Grainger*, 840 N.E.2d [843,] 847 [ (Ind.Ct.App.2006) ] (recognizing that the "issuance of findings in a judgment rendered in proceedings supplemental is disfavored in Indiana," and treating trial court's findings as "general findings . . . and consider[ing] the findings as far as they supply the trial courts' legal reasoning for ren-

dering their judgments"). "We will affirm the trial court's judgment on any legal theory supported by the evidence most favorable to the judgment, together with all reasonable inferences to be drawn therefrom."

*Prime Mortg. USA, Inc. v. Nichols*, 885 N.E.2d 628, 668–69 (Ind.Ct.App.2008) (some internal citations omitted).

### b. *Legal Background*

A garnishment proceeding is a means by which a judgment creditor seeks to reach property of a judgment debtor in the hands of a third person, so that the property may be applied in satisfaction of the judgment. *Freidline v. Thomalla*, 852 N.E.2d 17, 20 (Ind.Ct.App.2006). It is well settled under Indiana law that a judgment creditor acquires an equitable lien on funds owed by a third party to the judgment debtor from the time the third party receives service of process in proceedings supplemental. *Radiotelephone Co. of Indiana, Inc. v. Ford*, 531 N.E.2d 238, 240 (Ind.Ct.App.1988) (citing *Butler v. Jaffray*, 12 Ind. 504 (1859)). Accordingly, "the third party in proceedings supplemental is liable for paying out funds in a manner inconsistent with the judgment creditor's lien." *Radiotelephone* at 241.

However, like the majority of jurisdictions, Indiana recognizes a right of depositary banks to "set-off" any amounts owed to them with funds from their indebted depositors' accounts after receipt of notice of garnishment proceedings. *Farmers State Bank of Mentone, Inc. v. United States Internal Revenue Service*, 22 F.Supp.2d 892, 895 (N.D.Ind.1998). As a result, under the majority view, a gar-

---

**6.** In its discussion, PNB does not advance any argument that Fifth Third lacked a perfected security interest or failed to establish control over OMS' deposit account(s). Nor has PNB cited to any Indiana statutory authority in support of its contention that Fifth Third has waived its priority status. Rather, its entire argument hinges upon its contention that Fifth Third waived its right to enforce its security interest by its conduct.

nishing creditor has no greater rights in the judgment debtor's assets than the judgment debtor does. *See McFarland v. Brier,* 850 A.2d 965, 979 (R.I.2004). "Thus, courts reason, if they allowed a subsequent garnishing creditor to prevail over a bank's right to set-off against its [judgment debtor-depositor], they would afford this creditor greater rights than the [judgment debtor-depositor] possesses in such assets that it has placed in the bank's control." *Farmers State Bank,* 22 F.Supp.2d at 895.

### c. *Analysis*

■ At issue herein is whether Fifth Third failed to properly exercise its right of set-off and "freeze" OMS' deposit accounts in their entirety, causing Fifth Third to lose its priority position as a secured creditor in relation to PNB. We conclude that it did not.

We find that Fifth Third's security interest in OMS' deposit account was automatically perfected by its control over the account. Indiana Code section 26–1–9.1–104 provides,

(a) A secured party has control of a deposit account if:

(1)the secured party is the bank with which the deposit account is maintained;

\*　　\*　　\*

(b) A secured party that has satisfied subsection (a) has control, even if the debtor retains the right to direct the disposition of funds from the deposit account.

Comment 3 to Indiana Code section 26–1–9.1–104 states that "[t]he effect of [subsection (a)(1) ] is to afford the bank automatic perfection." I.C. § 26–1–9.1–104, cmt. 3. Here, the record reveals, per OMS president Mayol's testimony, that OMS had maintained its Fifth Third deposit ac-

count(s) consistently since "[a]pproximately 2005 or early 2006." (Tr. 11). Thus, Fifth Third had control of the deposit account(s) such that it was automatically perfected therein.

■ Also, a perfected security interest takes priority over a conflicting unperfected security interest in the same collateral. *Barwell, Inc. v. First of America Bank–LaPorte, N.A.,* 768 F.Supp. 1312, 1317 (N.D.Ind.1991). Under the U.C.C, when a debtor defaults under a loan agreement, certain rights and remedies inure to the benefit of the creditor with a perfected security interest. *McFarland,* 850 A.2d at 979. Most relevant for our purposes herein, a secured party who holds a security interest in a deposit account that is perfected by control may set-off or apply the balance of the deposit account to the loan obligation secured by the deposit account. *Myers v. Christensen,* 278 Neb. 989, 776 N.W.2d 201 (2009).

■ Often, in the context of secured transactions, first in time is first in right. As a secured creditor with a prior perfected first security interest in the deposit account, Fifth Third had superior rights to PNB and other subsequent lien holders. It has been held that a security interest perfected prior to entry of a judgment trumps the rights of an unsecured judgment creditor. *Joseph Stephens & Co., Inc. v. Cikanek,* 588 F.Supp.2d 870, 873 (N.D.Ill.2008); *McFarland,* 850 A.2d at 978. A perfected security interest is therefore superior to a judgment obtained against the debtor, "especially where that judgment arose subsequent to perfection of the security interest and where that judgment had not been further enforced by an execution or levy upon the judgment debtor's property." *Cikanek* at 873.

Here, it is clear from the record that Fifth Third's perfected security interest in OMS' deposit account(s) predated both

PNB's default judgment and service of notices of garnishment proceedings. Moreover, the record established that at the time of default, OMS owed Fifth Third sums well in excess of its $470,000.00[7] account balance. Thus, after OMS defaulted, Fifth Third was entitled to exercise the remedy of self-help to apply the balance of OMS' deposit account(s) to its indebtedness under the security agreement. *See Farmers State Bank,* 22 F.Supp.2d at 895 (following default by an indebted depositor, a bank may exercise its right of set-off after service of garnishment).

PNB argues that by failing to properly exercise its right of set-off, Fifth Third lost its superior priority status as a secured creditor and should, therefore, be foreclosed from attempting to belatedly enforce its right to the deposit account(s). We disagree.

A garnishing creditor has no greater rights in the judgment debtor's assets than does the judgment debtor. *Id.* Allowing a subsequent garnishing creditor to prevail over a bank's right of set-off against its indebted depositor would afford the creditor *greater* rights than the indebted depositor had in the deposit account or other such assets of the depositor that were within the bank's control. *Id. See also McFarland,* 850 A.2d at 979.

The record reveals that at the May 18th, 2009 hearing, the trial court heard evidence that OMS owed Fifth Third in excess of $1 million; however, at that time, OMS' deposit account(s) contained approximately $470,000.00. Given the extent of OMS' indebtedness to Fifth Third, its rights in the deposit account(s) were extremely subject to Fifth Third's security interest; thus, allowing PNB to prevail over Fifth Third's right of set-off against OMS would improperly afford PNB *greater* rights in the deposit account(s) than OMS possessed. Accordingly, we conclude that by ordering Fifth Third to pay the PNB judgment, the trial court improperly afforded to PNB greater rights in the deposit account than debtor OMS possessed. This was error.

Nor are we persuaded by PNB's argument that Fifth Third lost its superior priority status when it continued to honor checks drawn on OMS' deposit account. Indiana Code section 26–1–9.1–104(b) and the comment thereto expressly provide that a secured party's decision to allow the debtor to reach the funds in its deposit account is "not inconsistent with 'control'" for purposes of automatic perfection in the deposit account. I.C. § 26–1–9.1–104(b), cmt. 3. This provision gives secured creditors, in certain circumstances, the latitude to allow their indebted depositors to have reasonable access to funds, which may enable them to continue to operate and generate revenue that may be applied to their existing indebtedness. We do not find this particular approach to be so egregious or inconsistent with the goals of set-off, which ultimately hinge on satisfaction of the depositor's indebtedness. *See Myers,* 776 N.W.2d at 207 (garnishee bank's decision to honor indebted depositor's checks after notice of garnishment was calculated business decision to enable depositor to perform on a contract and, thereby, to generate revenue which could be applied to its indebtedness, and could not be viewed as waiver of bank's security interest). Moreover, we observe that pursuant to the trial court's order, Fifth Third had imposed a $150,000.00 freeze on the funds in OMS'

---

7. Fifth Third's second amended answers to interrogatories, filed with the trial court on May 18, 2009, indicated that OMS had an account balance of approximately $470,000.00.

account(s), ensuring that the account balance(s) were sufficient to satisfy PNB's judgment.

Based upon the foregoing, we conclude that the trial court erred in failing to address the underlying secured transactions dispute on the merits. Specifically, the trial court failed to honor the rights and protections afforded to Fifth Third as a secured creditor with a perfected security interest in OMS' deposit account(s). *See* 25A Indiana Law Encyclopedia, *Secured Transactions* § 22 (2002) (The general purpose and effect of perfection under the Uniform Commercial Code is to secure the priority of the holder of a perfected security interest against subsequent purchasers and lien holders.). Because the funds in OMS' deposit account were under the control of Fifth Third, and were considerably less than the indebtedness owed to Fifth Third, Fifth Third's rights therein were superior to those of PNB and any other subsequent lien holders; thus, the deposit account was not subject to attachment to satisfy the PNB judgment.

Accordingly, we reverse the trial court's order and vacate the final order in attachment in favor of PNB, and remand with instructions to enter judgment in favor of Fifth Third consistent with our opinion herein.

### 2. *Sanctions*

█ Although we find that the trial court's order of attachment was error, as applied herein, we are satisfied that Fifth Third's behavior and conduct was unacceptable during the discovery phase with respect to PNB's multiple requests for truthful answers to interrogatories served upon Fifth Third.

█ It is axiomatic that "[i]n protecting [the] discovery process, the trial court has the inherent power to impose sanctions." *Prime Mortg.*, 885 N.E.2d at 650

(quoting *Noble County v. Rogers*, 745 N.E.2d 194, 198 (Ind.2001)). *See also City of Gary v. Major*, 822 N.E.2d 165, 169 (Ind.2005) (trial court has inherent power to punish parties in order to "maintain[ ] its dignity, secur[e] obedience to its process and rules, rebuk[e] interference with the conduct of business, and punish[ ] unseemly behavior").

The record contains evidentiary support for the trial court's finding that Fifth Third acted inappropriately during the discovery phase of the instant action. On several occasions, Fifth Third provided false and/or misleading responses to PNB's interrogatory questions regarding OMS' deposit account(s) and whether the account(s) were subject to any liens. Fifth Third's conduct caused PNB to expend additional time, means, and funds to secure the relevant and truthful answers to its interrogatories. It was only after the trial court set the matter for an evidentiary hearing, and the president of OMS appeared, that PNB learned that OMS did maintain deposit account(s) with Fifth Third. Thus, rather than remand for a new hearing to determine whether sanctions are warranted, we determine that they are. Therefore, we remand to the trial court with instructions to determine the appropriate amount of sanctions to be assessed against Fifth Third.

Reversed and remanded with instructions.

KIRSCH, J., and BRADFORD, J., concur.