Opinion filed December 31, 2018



In The

# Eleventh Court of Appeals

_____

## No. 11-16-00356-CV
_____

### LEGACY BANK, Appellant

### V.

### FAB TECH DRILLING EQUIPMENT, INC. AND IMPULSE ELECTRIC, LTD., Appellees

**On Appeal from the 161st District Court**
**Ector County, Texas**
**Trial Court Cause No. B-134,780**

## O P I N I O N

This case presents a question of first impression in this State: whether the holder of a prior perfected security interest waives its priority right to collateral by failing to declare default or otherwise take an affirmative action to foreclose on the collateral prior to a judgment lien creditor exercising foreclosure rights on the same collateral through garnishment.

Appellant, Legacy Bank, appeals the trial court's judgment awarding garnished funds in the amount of $1,661,399.45 to Appellees, Fab Tech Drilling Equipment, Inc. and Impulse Electric, Ltd., and ordering Legacy to pay Appellees' attorney's fees totaling $266,558.75. The trial court based its judgment on the jury's determination that Legacy waived its security interest in the collateral.

Legacy contends that the trial court erred in ordering that the funds be released to Appellees since Legacy, by virtue of being a prior perfected security interest holder, is entitled to priority over the funds as a matter of law. Conversely, Appellees argue that, although Legacy was a prior perfected security interest holder, Legacy waived its security interest by choosing to continue lending to a financially insolvent company instead of declaring default and foreclosing on its collateral.

In a factually similar case of first impression, the Oregon Court of Appeals held that a prior perfected security interest holder does not waive its senior security interest by failing to exercise its elective remedies prior to a junior judgment creditor exercising foreclosure rights through garnishment. *Davis v. F.W. Fin. Servs., Inc.*, 317 P.3d 916 (Or. App. 2013), *rev. denied*, 355 Or. 567 (2014). Instead, the senior security interest holder is entitled to later trace and recapture its collateral. *Id.* We hold that the same result is required under Texas law. Accordingly, we reverse and render in part and reverse and remand in part.

*Background Facts*

The relevant facts of this case are largely not in dispute. On October 28, 2011, the debtor, Canyon Drilling Company, executed and delivered a promissory note to Legacy. In exchange, Legacy extended a revolving line of credit to Canyon. Canyon and Legacy also executed a business loan agreement and a commercial security agreement granting Legacy a security interest in, among other things, Canyon's accounts receivable. The security agreement was perfected by a UCC-1 financing statement that Legacy had previously filed in Oklahoma, covering, among other

things, all of Canyon's inventory, equipment, accounts, and proceeds then owned or thereafter acquired. Both the business loan agreement and the security agreement contained nonwaiver clauses. *See Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 481 (Tex. 2017) (addressing contractual nonwaiver provisions). Additionally, the note provided that Legacy was entitled to "delay or forego enforcing any of its rights or remedies under [the] Note without losing them" and could "renew or extend (repeatedly and for any length of time) [the] loan." Legacy and Canyon executed additional promissory notes under the security agreement through 2014.

Prior to executing the note, Canyon and Legacy had also executed a lock box agreement allowing Legacy to directly accept payment on Canyon's behalf from Canyon's customers. Following execution of the note, Legacy exercised its rights under the lock box agreement and began to directly receive payments on Canyon's invoices. Legacy advanced funds to Canyon through the line of credit based on the payments it received through the lock box agreement.

Appellees are trade creditors of Canyon. On December 13, 2012, Appellees obtained a default judgment against Canyon for $1,661,399.45 in Ector County for unpaid services Appellees had provided to Canyon. In an effort to collect the judgment, Appellees filed a writ of garnishment on January 15, 2013, seeking to garnish accounts receivable owed Canyon by garnishees J. Cleo Thompson and James Cleo Thompson, Jr., L.P. (collectively "Thompson").

Upon learning of Appellees' garnishment, Legacy filed a plea in intervention asserting that it held a properly perfected security interest in the garnishees' accounts due and owing to Canyon. Legacy asserted that its security interest was superior to Appellees' judgment and lien because it was perfected prior to the judgment. After Legacy intervened, the garnishees filed an interpleader claim offering to deposit the disputed funds in the court's registry. The trial court subsequently entered an agreed

order accepting the garnishees' deposit of the disputed fund into the registry of the court.

Legacy subsequently provided a formal notice of default to Canyon on July 19, 2013. Despite Canyon's initial default, Legacy continued to advance funds to Canyon and accepted additional promissory notes from Canyon in hopes that successful operations would ensue. However, Legacy ultimately exercised its foreclosure rights against Canyon after the note became due in April 2014.

Legacy sued Canyon in Oklahoma for a judgment on the debt owed under the notes and for confirmation and enforcement of Legacy's prior perfected security interest. The Oklahoma court granted Legacy summary judgment against Canyon, finding that Legacy held "a first priority security interest in all of Canyon's accounts receivable" and that Legacy had "not waived its rights to enforce the Commercial Security Agreements in writing or otherwise." The Oklahoma court entered a final judgment in Legacy's favor on December 2, 2015. Appellees were not a party to the Oklahoma suit.

The underlying jury trial occurred in October 2016. The trial court submitted a single question to the jury: "Did Legacy waive its right to recover over [Appellees]?" The trial court included the following instruction with respect to the question: "A party waives a right when they intentionally surrender a known right or display intentional conduct inconsistent with the claiming of the right." The jury answered: "Yes." Following the verdict, the trial court entered a final judgment awarding the interpleaded funds to Appellees and ordering Legacy to pay Appellees' attorney's fees.

*Analysis*

Legacy challenges the trial court's judgment in six issues. In the first three issues, Legacy challenges the legal and factual sufficiency of the evidence supporting the jury's waiver finding. In analyzing a legal sufficiency challenge, the

4

court determines whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The evidence is reviewed in the light most favorable to the challenged finding, crediting any favorable evidence a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not. *Id.* at 821–22, 824. The court may sustain a no-evidence or legal sufficiency challenge when (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810.

In its first issue, Legacy asserts that its prior perfected security interest in Canyon's collateral had priority over Appellees' subsequent lien. In presenting this contention, Legacy cites Article 9.317 of the Uniform Commercial Code to assert that its prior perfected security agreement has priority over Appellees' later judgment lien that attached as a result of the garnishment action. *See* TEX. BUS. & COM. CODE ANN. § 9.317 (West Supp. 2018); *see also* Frederick H. Miller & Carl S. Bjerre, 9B HAWKLAND UCC SERIES § 9–317:2 (Rev. 2018) (under Section 9.317(a)(2), "a perfected security interest should take priority over a subsequent lien creditor"); James J. White, Robert S. Summers, & Robert A. Hillman, 4 WHITE, SUMMERS, & HILLMAN, UNIFORM COMMERCIAL CODE § 33.2 ("by negative implication, [Article 9.317] says that a perfected secured creditor beats a lien creditor"). This principle of priority reflects the general statement of the effectiveness of a security agreement that is set out in Article 9.201 of the UCC: "[A] security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors." BUS. & COM. § 9.201(a) (West 2011); *see* Miller & Bjerre, 9B HAWKLAND UCC SERIES § 9–317:2.

Appellees acknowledge that Legacy perfected its security interest in the collateral prior to the attachment of their judgment lien. Thus, Appellees assert that this case is not about determining which party's security interest attached first but, rather, whether Legacy waived its security interest. Legacy challenges Appellees' waiver claim in its second and third issues. In its second issue, Legacy asserts that Appellees recovered under a waiver theory that is not recognized in Texas or by the majority of jurisdictions. Legacy asserts in its third issue that it did not intentionally waive its rights to the collateral under the terms of the documents that it executed with Canyon. As noted previously and as discussed in detail below, the security agreement that Legacy and Canyon executed contain a strict nonwaiver provision. The applicability of this nonwaiver provision lies at the heart of the dispute in this appeal.

Appellees argue that Legacy waived its security interest by (1) allowing Canyon to remain in default for several years without making demand, accelerating the debt, liquidating collateral, or otherwise enforcing its security interest; (2) not demanding payment until a year after Appellees received a judgment against Canyon and more than six months after Canyon filed the writ of garnishment; and (3) making a "nominal, halfhearted demand on Canyon solely to save face" before loaning Canyon more than $2 million in additional funds. In advancing this argument, Appellees assert that they are not bound by the terms of the contracts executed by Legacy and Canyon to define the terms by which Legacy could waive its security interest. Instead, Appellees assert that they were entitled to establish a waiver under equitable principles.

The Oregon Court of Appeals recently addressed a similar issue in *Davis v. F.W. Financial Services, Inc.* In *Davis*, judgment creditors (collectively "Davis") garnished accounts receivable owed to a debtor, Dryer, in which F.W. Financial Services (FWFS) held a prior perfected security interest. *Davis*, 317 P.3d at 918.

6

When FWFS attempted to recapture the garnished funds from Davis, Davis sought a declaration that his interest in the accounts receivable was superior to FWFS's interest. *Id.* Davis argued that, notwithstanding a nonwaiver provision in FWFS's security agreement, FWFS had "waived its rights as a prior perfected secured party by failing to exercise elective remedies after default and before Davis obtained judgment and collected the disputed funds."[1] *Id.* at 921. Thus, while Davis did not dispute that FWFS held a valid, prior perfected security interest in the accounts receivable, Davis argued that, as a matter of equity and policy, FWFS had waived and forfeited its superior interest by (1) failing to accelerate Dryer's debt, (2) failing to demand direct payment from Dryer's accounts receivable debtors, and (3) allowing Dryer to continue operations to the detriment of Davis. *Id.* at 920. Accordingly, Davis's claims were similar to Appellees' contention in this case.

Conversely, FWFS asserted that, notwithstanding its failure to exercise its elective remedies, "its prior perfected security interest in Dryer's accounts receivable continued in the proceeds of those accounts and that, as a secured party, [it] was entitled to trace and recapture those funds from Davis." *Id.* at 918. Additionally, FWFS contended that nothing in either its security agreement—which contained a nonwaiver clause—or the Uniform Commercial Code (UCC) required that its security interest be subordinated to a garnishing lien creditor. *Id.* at 919–21. Thus, the Oregon court was confronted with the issue of whether, "notwithstanding the language of the security agreement, waiver . . . nevertheless occurred by operation of law." *Id.* at 921.

---

[1]As was the case in *Davis*, we are asked to hold that, notwithstanding a nonwaiver provision in Legacy's security agreement with Canyon, Legacy nonetheless impliedly waived its priority status by failing to take an affirmative action to foreclose upon its collateral prior to Appellees' garnishment. *See Davis*, 317 P.3d at 921.

To analyze the issue, the court in *Davis* first turned to Oregon's version of the UCC, which governs secured transactions. *Id.* at 921–22. The court noted that the Oregon legislature had substantially adopted Article 9 of the UCC. *Id.* at 922. The court then looked to case law from other jurisdictions in an effort to interpret the Article uniformly. *Id.* Specifically, the court examined two distinct theories that had been adopted in other jurisdictions: the "waiver" approach and the "trace and recapture" approach. *Id.*

In analyzing the waiver approach, the court in *Davis* examined a line of federal cases from the Northern District of Illinois—cases that Appellees also rely upon. *Id.* at 922–24 (discussing *S.E.I.U. Local No. 4 Pension v. Pinnacle Health*, 560 F. Supp. 2d 647 (N.D. Ill. 2008), and *Shales v. Pipe-Liners, Ltd.*, No. 09-cv-1822, 2012 WL 4793499 (N.D. Ill. Oct. 9, 2012) (mem. op.)). In *S.E.I.U.*, a lender with a perfected security interest in a debtor's accounts receivable failed to declare the debtor's loan in default or otherwise take actions to enforce its UCC and contractual rights prior to a third-party judgment creditor obtaining a judgment and order for release of funds. 560 F. Supp. 2d at 648–51. In interpreting the security agreement between the parties, the court in *S.E.I.U.* concluded that the lender did not become a secured creditor until after a default occurs. *Id.* at 650; *see One CW, LLC v. Cartridge World N. Am., LLC*, 661 F. Supp. 2d 931, 934 (N.D. Ill. 2009) (analyzing and applying *S.E.I.U.* to a security agreement with the same language). Because the secured creditor had failed to declare default prior to the judgment creditor obtaining a judgment and order, the court held it did not have a present right to the funds nor a basis on which to object to their release. 560 F. Supp. 2d at 651.

The Northern District of Illinois expanded on its *S.E.I.U.* holding in *Shales v. Pipe-Liners*. 2012 WL 4793499. In *Shales*, a secured party with a prior perfected security interest in a debtor's accounts lost its priority to an unsecured judgment creditor since the secured party "took no action" until after the unsecured creditor

8

had obtained a judgment lien against the debtor. *Id.* at \*1–3. Because the secured party had failed to "preserve its rights," it was also precluded from tracing and recapturing the funds. *Id.* at \*3–4.

The Oregon court determined that, taken together, the cases from the Northern District of Illinois impose three preconditions on a secured creditor attempting to enforce its interest in garnished collateral funds under the waiver theory: (1) a default has to occur; (2) the secured party must declare a default; and (3) the secured party must take an "affirmative step" to exercise its rights (such as acceleration). *Davis*, 317 P.3d at 923; *see S.E.I.U.*, 560 F. Supp. 2d at 647; *Shales*, 2012 WL 4793499 at \*1–4. If any of the preconditions remain unsatisfied as of the time the lien creditor garnishes funds, "the secured party is deemed to have constructively waived its priority *vis-à-vis* the lien creditor, and, thus, cannot trace and recapture its collateral from the garnishor." *Davis*, 317 P.3d at 923. *S.E.I.U.*'s waiver theory has been characterized as a "use-it-or-lose-it" approach. David I. Cisar & Christopher J. Schreiber, 35-FEB AM. BANKR. INST. J. 12 at \*12–13 (2016). As reflected by *Davis*, this characterization of the waiver approach is accurate.

Conversely, under the trace and recapture approach, "before and until a secured party declares default and acts on its right to collateral, a garnishor is entitled to take the collateral; however, in doing so, the garnishor takes traceable collateral subject to the secured party's interest." *Davis*, 317 P.3d at 924. "Thus, unlike the waiver approach, the secured party maintains its security interest, despite a period of inaction after default and before a judgment creditor takes the funds." *Id.* In other words, a security interest under the trace and recapture approach is not lost if it is not used.

The court in *Davis* cited *Frierson v. United Farm Agency, Inc.* as an example of the trace and recapture approach. *Id.* (discussing *Frierson v. United Farm Agency, Inc.*, 868 F.2d 302 (8th Cir. 1989)). In *Frierson*, a judgment creditor attempted to

garnish funds held in a debtor's deposit accounts. 868 F.2d at 302–03. A bank intervened, asserting that it held a superior interest in the funds pursuant to its prior perfected security interest in the deposit accounts. *Id.* at 303. However, because the bank had not declared a default nor sought to enforce any other remedies prior to the garnishment, the court held that the bank had neither a present right to the funds nor a right to have the garnishment quashed. *Id.* Nonetheless, the *Frierson* court clarified that, regardless of whether the funds in question are viewed as collateral or as proceeds, Article 9 requires that the unsecured judgment creditor "take the remaining funds subject to [the secured party's] security interest" if the secured party refuses to exercise its remedies under the Code. *Id.* at 305. The secured party's security interest in the funds will continue, and the secured party "can trace and recapture when it chooses to declare the loan in default and accelerate the debt." *Id.* Thus, the court held that, while the judgment creditor had a right to the funds, that right was subject to the Bank's interest, and the Bank could trace and recapture the funds at a later time after declaring default. *Id.*

After analyzing each theory, the Oregon court determined that the trace and recapture approach was most consistent with "the UCC determination of priority, continuation of a security interest, and tracing the identifiable proceeds of collateral." *Davis*, 317 P.3d at 925. The court explained that the "primacy of a prior perfected secured creditor's claim to collateral is the 'touchstone' of Article 9, which starts with a sweeping rule of priority and then carves out exceptions to that rule," but that priority "is not capable of being lost in the manner that the 'waiver' approach suggests." *Id.*

The court also recognized that there are valid reasons a secured party might choose to forego declaring default in favor of working with a troubled debtor to resolve its financial problems—an outcome that might allow a debtor to pay a greater portion of its debt. *Id.* The court explained that, while the trace and recapture theory

would allow for such an opportunity, should the waiver approach be adopted, secured parties would be required "to act immediately to realize on collateral in any and every event of technical default, or risk losing their interest in collateral, whether outright or by subordination"—a compulsion that would conflict with most security agreements and is not contemplated by the UCC. *Id.*

Accordingly, the Oregon court chose to adopt and apply the trace and recapture approach. *Id.* The court held that FWFS possessed a prior perfected security interest in the collateral superior to Davis's judgment lien and, notwithstanding FWFS's delay in enforcing its security interest, FWFS was entitled to trace and recapture its collateral or the proceeds therefrom. *Id.* at 926.

The Hawkland UCC commentary addresses *Davis*'s adoption of the trace and recapture approach over the waiver approach. Miller & Bjerre, 9B HAWKLAND UCC SERIES § 9–317:2 at n.39. The Hawkland commentary concludes that *Davis* "more thoughtfully" reflects the principles of Article 9. *Id.* The commentary asserts that the waiver approach adopted in *S.E.I.U.* is incorrect, in part because of a misapplication of *Frierson*. *Id.* The commentary also opines that *S.E.I.U.* misconstrued the security agreement at issue. *Id.*

We agree with the reasoning of the Oregon Court of Appeals in *Davis* that the trace and recapture approach is the correct view with respect to a senior secured creditor's security interest in collateral. In reaching this holding, we reject the possibility that a senior secured creditor may waive its security interest under equitable principles by not enforcing it prior to the attachment of a junior creditor's lien.

The official comments to Section 9.610 of the UCC expressly support the trace and recapture approach. BUS. & COM. § 9.610 cmt. 5. Although the official comments following the Code provisions are not law, "they are persuasive authority concerning interpretation of the statutory language." *Lockhart Sav. & Loan Ass'n v.*

*RepublicBank Austin*, 720 S.W.2d 193, 195 (Tex. App.—Austin 1986, writ ref'd n.r.e). Comment No. 5 to Section 9.610 is entitled "Disposition by Junior Secured Party." BUS. & COM. § 9.610 cmt. 5. It provides that "the disposition by a junior [creditor does] not cut off a senior's security interest." *Id.* Rather, "[t]he holder of a senior security interest is entitled, by virtue of its priority, to take possession of collateral from the junior secured party and conduct its own disposition." *Id.* Unless the senior secured party has authorized the disposition free and clear of its security interest, the senior's security interest ordinarily will survive the disposition by the junior. *Id.* Thus, comment five stands for the proposition that, while a junior security interest holder is entitled to exercise its disposition rights, it does so subject to senior security interest holders who are then allowed to later recover collateral from the junior creditor. *See id.*

Other jurisdictions have relied upon the law of garnishment in rejecting the waiver approach. In *Fifth Third Bank v. Peoples Nat. Bank*, the garnishor asserted that a creditor with a prior perfected security interest lost its superior priority status by failing to exercise its right of set-off against a bank deposit prior to the service of the writ of garnishment. 929 N.E. 2d 210, 216 (Ind. Ct. App. 2010). The Indiana Court of Appeals rejected the garnishor's argument on the following basis:

> A garnishing creditor has no greater rights in the judgment debtor's assets than does the judgment debtor. Allowing a subsequent garnishing creditor to prevail over a bank's right of set-off against its indebted depositor would afford the creditor *greater* rights than the indebted depositor had in the deposit account or other such assets of the depositor that were within the bank's control.

*Id.* (citations omitted). The Nebraska Supreme Court reached the same conclusion in *Myers v. Christensen*, 776 N.W.2d 201, 205 (Neb. 2009) ("The claim of a judgment creditor garnishor against a garnishee can rise no higher than the claim of the garnishor's judgment debtor against the garnishee."). The holding in *Myers* has

been observed to be "the better rule because a secured party should not have to enforce its security interest to prevent a garnishment." 50 No. 6 U.C.C. LAW LETTER NL 1, *Some Fine Lines*.

Garnishments in Texas operate under the same principle. Service of a writ of garnishment "fixes a lien on the debtor's property or debts due him, '*subject to prior valid rights and liens against such property or debt.*'" *Nat'l City Bank v. Tex. Capital Bank, N.A.*, 353 S.W.3d 581, 585 (Tex. App.—Dallas 2011, no pet.) (quoting *Hubbell, Slack & Co. v. Farmers' Union Cotton Co.*, 196 S.W. 681, 684 (Tex. Civ. App.—Beaumont 1917, writ ref'd)). A garnishor acquires no greater rights than the debtor had. *Id.* at 586. When a garnishment writ is served, the garnishor steps into the shoes of the debtor. *Id.* We addressed this principle in *Pace v. Pierson*, when we recognized that the garnishor acquires no greater right by service of the writ of garnishment than the judgment debtor would be able to assert and enforce. 145 S.W.2d 929, 931–32 (Tex. Civ. App.—Eastland 1940, no writ). Applying this principle of garnishment law to the circumstances of this appeal, Appellees stepped into the shoes of Canyon by virtue of the garnishment and acquired no greater rights than Canyon would be able to assert or enforce against Legacy with respect to the continued existence of Legacy's security interest.

Accordingly, Legacy's security interest in the collateral could not be waived under equitable principles or by operation of law by not being enforced prior to the garnishment. Instead, the UCC affords Legacy the opportunity to trace and recapture its prior perfected security interest in the garnished funds even though it did not exercise those rights prior to the garnishment. That is not to say that it was impossible for Legacy to waive its security interest because, under Texas law, waiver is a valid defense to an action to enforce a security interest. *See W.W. Montgomery v. Fuquay-Mouser, Inc.*, 567 S.W.2d 268, 270 (Tex. Civ. App.—Amarillo 1978, no writ); *see also First Interstate Bank of Ariz., N.A. v. Interfund Corp.*, 924 F.2d 588,

13

595 (5th Cir. 1991). Section 9.315 contemplates the express waiver of a security interest. BUS. & COM. § 9.315(a)(1) (a security interest continues in collateral notwithstanding disposition thereof *unless the secured party authorized the disposition free of the security interest*); *see First Interstate Bank of Ariz.*, 924 F.2d at 595 (citing predecessor to Section 9.315).

Waiver is defined as "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (quoting *Sun Expl. & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987)). Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances. *Id.* There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right. *Id.* Waiver is ordinarily a question of fact, but when the surrounding facts and circumstances are undisputed, the question becomes one of law. *Id.* at 156–57. The relevant inquiry is whether Legacy waived its security interest in the garnished collateral either expressly or by implication. *See First Valley Bank of Los Fresnos v. Martin*, 144 S.W.3d 466, 471 (Tex. 2004). There can be no waiver if the actor says and does nothing inconsistent with its rights. *Id.*

Legacy's security interest in the collateral is governed by the security agreement executed between Legacy and Canyon. As we previously noted, Section 9.201 provides that "a security agreement *is effective according to its terms* between the parties, against purchasers of the collateral, and *against creditors*." BUS. & COM. § 9.201(a) (emphasis added). Comment 2 to Section 9.201 clarifies that a security agreement is effective between the debtor and secured party "and is likewise effective against third parties." *Id.* cmt. 2. Thus, the UCC provides that the security agreement between Legacy and Canyon is effective against Appellees. The law of garnishment provides for the same result because Appellees stand in the shoes

of Canyon and acquired no greater right than Canyon would be able to assert and enforce. *Pace*, 145 S.W.2d at 931–32. Accordingly, we disagree with Appellees' contention that they are not bound by the terms of Legacy's security agreement with Canyon because to hold otherwise would give Appellees greater rights than those possessed by Canyon.

Legacy's security agreement contained a nonwaiver clause, which stated as follows:

> **No Waiver by Lender.** [Legacy] shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by [Legacy]. No delay or omission on the part of [Legacy] in exercising any right shall operate as a waiver of such right or any other right.

The note, lock box agreement, and business loan agreement also contained similar nonwaiver provisions. The Texas Supreme Court recently addressed nonwaiver clauses in *Bradberry*. 526 S.W.3d at 481. The court stated that "[g]iven Texas's strong public policy favoring freedom of contract, there can be no doubt that, as a general proposition, nonwaiver provisions are binding and enforceable." *Id.* By its express terms, the nonwaiver provision in the security agreement provides that no delay or omission by Legacy in exercising its rights under the security agreement operates as a waiver of its security agreement. Thus, the security agreement itself precludes an application of the waiver approach adopted in *S.E.I.U.*[2]

There is no evidence that Legacy expressly waived its security interest under the security agreement in a writing executed by Legacy as required by the security agreement. Furthermore, there is no evidence that Legacy waived its security interest by implication because there is no evidence that Legacy did anything

---

[2]As noted previously, *S.E.I.U.* derived its waiver approach from a reading of the security agreement between the creditor and the debtor. 560 F. Supp. 2d at 651. The terms of the security agreement between Canyon and Legacy lead to the opposite result in this appeal.

inconsistent with its security interest. *See Martin*, 144 S.W.3d at 47; *Jernigan*, 111 S.W.3d at 156. There is no evidence that Legacy engaged in conduct "unequivocally inconsistent with claiming a known right." *Bradberry*, 526 S.W.3d at 485 (quoting *Van Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351, 353 (Tex. 2005)). Accordingly, we agree with Legacy that there is no evidence supporting the jury's determination that Legacy waived its security interest.

We sustain Legacy's first, second, and third issues on the basis that they present a challenge to the legal sufficiency of the evidence. We do not reach Legacy's challenge to the factual sufficiency of the evidence presented by these issues because we have sustained Legacy's legal sufficiency challenge. We do not reach Legacy's fourth and fifth issues because our resolution of the first three issues is dispositive of the matters presented in the fourth and fifth issues.[3]

In its sixth issue, Legacy asserts that the trial court erred when it awarded Appellees their attorney's fees. Legacy asserts that we should reverse and render a judgment that Appellees are not entitled to attorney's fees and that we should remand the case so that the trial court can determine the amount of attorney's fees that Legacy is entitled to recover. The record does not clearly reflect the trial court's reason for awarding attorney's fees to Appellees. Legacy and Appellees sought a recovery of attorney's fees under Section 37.009 of the Texas Uniform Declaratory Judgments Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2015). This statute provides that a trial court may award reasonable and necessary attorney's fees as are equitable and just. *Id.* The trial court is not required to award attorney's fees to the prevailing party in a declaratory judgment action. *See*

---

[3]Legacy asserts in its fourth issue that its Oklahoma judgment against Canyon should be given preclusive effect with respect to its declaration that Legacy's security interest was not waived. Legacy asserts in its fifth issue that the trial court erred in the manner by which it submitted the waiver question to the jury.

*Barshop v. Medina Cty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637–38 (Tex. 1996). Additionally, a trial court may, in its discretion, award attorney's fees to the nonprevailing party in a declaratory judgment action. *Id.*

Presumably, the trial court awarded Appellees their attorney's fees based upon Appellees' recovery of the interpleaded funds. As a result of our disposition of this appeal, however, this recovery is reversed and rendered in favor of Legacy. Thus, Appellees are no longer prevailing parties. Accordingly, we sustain Legacy's sixth issue. We reverse the portion of the judgment awarding attorney's fees to Appellees, and we remand the issue of attorney's fees to the trial court for its reconsideration in light of this opinion.

## *This Court's Ruling*

We reverse the trial court's judgment awarding the interpleaded funds to Appellees, and we render judgment that the funds in the amount of $1,661,399.45 are awarded to Legacy. We also reverse the portion of the judgment awarding attorney's fees to Appellees, and we remand the issue of attorney's fees to the trial court for its reconsideration in light of this opinion.


JOHN M. BAILEY
CHIEF JUSTICE


December 31, 2018

Panel consists of: Bailey, C.J.,
Willson, J., and Wright, S.C.J.[4]

Willson, J., not participating.

[4]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.