Filed April 4, 1885.

---

No. 11,731.

FIRST NATIONAL BANK OF INDIANAPOLIS *v.* ARMSTRONG.

GARNISHEE.—*Liability of.*—A garnishee, from the time of the service of the summons upon him, is accountable to the plaintiff in the action for the amount of money, property or credits in his hands, or due and owing from him to the defendant.

SAME.—*Conversion of Securities after Summons.*—Where a bank, summoned as garnishee, after the service of summons, converts and disposes of collateral securities held by it, the burden is upon it to account to the plaintiff and to show that it has properly discharged its duty as custodian of such securities.

From the Marion Superior Court.

*T. A. Hendricks, C. Baker, O. B. Hord, A. W. Hendricks, A. Baker, E. Daniels, F. Knefler* and *J. S. Berryhill,* for appellant.

*B. Harrison, W. H. H. Miller, J. B. Elam, C. Byfield* and *L. Howland,* for appellee.

NIBLACK, J.—On the 3d day of October, 1881, John Armstrong, the appellee, filed his complaint in the court below against one Henry Ocorr, and commenced proceedings in attachment under the complaint against Ocorr's property, for money alleged to be due upon a promissory note.   On the 10th day of the same month proceedings in garnishment were commenced against the First National Bank of Indianapolis, the appellant in this cause, requiring it to answer as to prop-

erty charged to be in its possession belonging to Ocorr, and a summons was served on the bank the day following.

The bank answered, admitting that it had in its possession a note secured by mortgage, transferred to it by Ocorr, but averring that the note had been assigned to it as collateral security for an indebtedness due from the Henry Ocorr Manufacturing Company, and that the note was not of greater value than such indebtedness, and hence denying that it had in its possession any property belonging to Ocorr.

The attachment proceedings against Ocorr were sustained, and Armstrong obtained judgment against him for $7,280.87.

At a trial between Armstrong and the bank, as garnishee defendant, the court below at special term made a finding that the bank was liable to Armstrong in the sum of $6,463.27, and rendered a judgment accordingly, which was affirmed in general term.

We regard the following as a fair synopsis of the facts upon which this latter judgment rests. Ocorr was the founder, principal stockholder and chief promoter of a manufacturing company doing business in the city of Indianapolis, known as the "Henry Ocorr Manufacturing Company." In the summer of 1881, the company having become financially embarrassed, and it being desirable that some new arrangement should be made for its more successful management, Ocorr entered into negotiations with one Nathaniel T. Wordin, of Bridgeport, Connecticut, for the sale to him of a large proportion of the shares of stock in the company, and, on the 5th day of September following, closed the negotiations by a consummation of the proposed sale. Ocorr took in payment a note executed by a firm known as Liebrum Brothers to Wordin, and endorsed by him, for $18,000, less a credit of $1,000, and secured by a mortgage on real estate in Bridgeport. Either immediately, or within a few days thereafter, Ocorr transferred this note to the bank as collateral security for something more than $12,000 which the company owed that institution. Ocorr also executed a power of attorney to

the president of the bank, authorizing him to sell the note and apply the proceeds to the payment of the debt due to the bank, and the discharge of other indebtedness. About the middle of September, 1881, the president of the bank visited Bridgeport for the purpose of selling the note, but was unable to obtain an offer for it which he felt authorized to accept, and upon inquiries made while in Bridgeport, he became satisfied that not more than $12,000 could probably be realized upon the note, either by its sale or a foreclosure of the mortgage given to secure it. Soon after the president's return from Bridgeport, the bank took judgment against the manufacturing company for $12,292.72, the amount for which the note in question was really held as collateral security. At the time this Liebrum note was delivered to the bank it held, and when this last named judgment was rendered in its favor it continued to hold, the individual notes of the appellee Armstrong, and of Hazelrigg, Wheeler, and possibly others, also stockholders in the company for the aggregate amount of about $6,000 as collateral security for the same indebtedness which the Liebrum note was transferred to it to secure. On the 5th day of November, 1881, a receiver was appointed for the manufacturing company, who took charge of its assets and of its business.

Wordin, being desirous of regaining the possession and ownership of the Liebrum note, paid the bank the sum of $12,000, and, on the 25th day of November, 1881, received from it an assignment of its judgment against the manufacturing company, as well as of the Liebrum note and other notes, held as collateral security for the payment of that judgment.

Afterwards Wordin, upon a compromise with the makers, received on the notes, other than the Liebrum note, assigned to him as above, the sum of $3,000, and from the receiver of the company, as a dividend due upon the judgment obtained by the bank, the further sum of $3,750. There was evidence tending to prove that the Liebrum note was of the probable

value of $12,000, and, estimating its value at that sum, Wordin realized on the securities he obtained from the bank the aggregate sum of $18,750. This was $6,457.28 in excess of the amount of the judgment assigned to him by the bank, and, allowing for some differences in accrued interest, was doubtless the basis of the court's finding in the proceedings against the appellant.

Section 931, R. S. 1881, provides for making third parties garnishee defendants in attachment proceedings, and for the issuance and service of summons upon such parties.

Section 932, next following, declares that " From the day of the service of the summons, the garnishee shall be accountable to the plaintiff in the action for the amount of money, property, or credits in his hands, or due and owing from him to the defendant."

Waples on Attachment, at page 293, says of a garnishee: " If he really owes the defendant or holds his property, he should say so in his answer; and he is then bound to hold what he has for account of whom it may concern. He can not change property, convert it into money, or play the owner, but must consider himself as the keeper, just as though appointed such by the sheriff or the marshal in the case of the ordinary seizure of personal property." On page 295, it is further said : " He can not voluntarily divest himself and deliver the property to the defendant. He must hold the goods from the owner, from a purchaser, from every claimant. Even when forcibly divested, he will be presumed responsible for the forthcoming of the property when required; and the *onus* will be upon him to show that he did his full duty as custodian." That author recognizes some exceptions to this rule, as where the usages of business or the best interests of the parties concerned shall so require, property may be converted into money and the proceeds held subject to the final order of the court having jurisdiction of the original action, but the general rule is as stated, and both

it and the exceptions are in harmony with the provisions of section 932 of the statute herein above set out.

Drake on Attachments, in commenting upon the general liability of a garnishee after summons has been served upon him, states as a conclusion, that "It should also be distinguished from the case of a liability existing, but uncertain as to amount, at the time of the garnishment, but which afterward becomes, as to the amount, certain. There the garnishment will attach, and the extent of the garnishee's liability will be determined by the subsequent ascertainment of the amount due. Such was a case where an insurance company was summoned as garnishee, in respect of an amount due the defendant for a loss of property insured by the company, which happened before but was not adjusted until after the garnishment; and the company was held liable." See section 669; see, also, Kneeland Attachment, 410, section 478, and *Simpson* v. *Potter*, 18 Ind. 429; *Hite* v. *Fisher*, 76 Ind. 231. Counsel for the appellant, conceding that their client was liable for the conversion of all the securities held by it in excess of the amount necessary to discharge its judgment against the manufacturing company, nevertheless argue that it can not be fairly inferred from the facts, as we have given them, that these securities were of greater value than the amount of the judgment at the time they were transferred to Wordin. But this argument impresses us as not fully meeting the case which the facts made against the appellant. By the statute, it was made *accountable* to the appellee for everything in its possession in which Ocorr had an interest, whether reversionary or otherwise, at the time the summons was served upon it. The facts clearly established a conversion by the appellant of all the collaterals held by it, and this threw upon it the burden of *accounting* to the appellee and of showing that it had properly discharged its duty as custodian of these collaterals. In the absence of such a showing, we think the court below was justified in assuming that the notes, so converted by the appellant, were worth what Wordin had

realized upon a part of them, and was presumably able to realize upon what still remained in his hands.

The judgment is affirmed with costs.

