


FILED
Mar 26 2018, 12:19 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 82S01-1705-PL-334

## Dennis Garner,
*Appellant (Plaintiff),*

–v–

## Gregory S. Kempf and
## Clerk of Vanderburgh County (garnishee)
*Appellees (Defendants).*

---

Argued: June 22, 2017 | Decided: March 26, 2018

Appeal from the Vanderburgh Superior Court
No. 82D07-1310-PL-4775
The Honorable Richard G. D'Amour, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 82A01-1512-PL-2362

---

**Opinion by Justice Slaughter**

Justices Massa and Goff concur.
Chief Justice Rush and Justice David dissent.

**Slaughter, J.**

At issue is whether Indiana law allows a judgment-creditor to garnish a cash bail bond the judgment-debtor posted in an unrelated criminal matter. The plaintiff tried to garnish the bond to satisfy his unpaid civil judgment, but the trial clerk, who was named a garnishee-defendant in the civil case, released it to the defendant's attorney. The plaintiff sought to hold the clerk liable, but the trial court ruled the bond was not subject to garnishment and found for the clerk. We disagree and reverse. The clerk who holds the bond in a criminal case is an eligible garnishee-defendant in the civil case where the judgment was entered, and the bond remains subject to the garnishment lien filed there. The only qualification is that the judgment-creditor may not recover on the bond until the criminal court releases it. Here, the clerk is liable on the bond because she distributed its proceeds before the civil court determined the plaintiff's right to them.

## Factual and Procedural History

In 2013 Plaintiff, Dennis Garner, obtained a default judgment for $20,600, plus costs, against Gregory Kempf in the Vanderburgh Superior Court 7. In that same court, Garner initiated proceedings supplementary to execution to collect on his civil judgment by garnishing Kempf's bank account and tax refunds.

On July 30, 2015, while his judgment to Garner remained unsatisfied, Kempf was arrested in an unrelated criminal matter. He appeared in a different court in Vanderburgh County—Superior Court 3—and posted a $5,000 cash bond with the County Clerk. The Clerk acknowledged Kempf's cash deposit by issuing receipt number 2015-40294-CLK.

The next day, Garner initiated new proceedings supplemental in the Civil Court, where he secured the default judgment, seeking to garnish the cash bond Kempf had posted in the Criminal Court. Garner's complaint named Kempf as defendant and the Clerk as garnishee-defendant. Garner served both defendants personally but filed nothing concerning the bond in the Criminal Court.

On August 13, after Kempf had been charged with a separate felony for which he was held without bond, he moved the Criminal Court to release the $5,000 bond to his defense counsel to pay legal fees. The Criminal Court granted the motion and ordered the Clerk to issue a check payable to Kempf's lawyer "for all monies and proceeds due under receipt number 2015-40294-CLK." Nobody notified the Criminal Court of the proceedings supplemental pending in the Civil Court.

On September 22, the Civil Court held a hearing on Garner's complaint concerning the proceedings supplemental. Garner sought a judgment against the Clerk for $5,000, arguing that once she received notice of the proceedings supplemental in the Civil Court concerning the Criminal Court bond, a judicial lien attached to that bond by operation of law and prevented her from releasing the money. The Clerk maintained she properly released the bond under the Criminal Court order because there was no final garnishment order concerning the proceedings supplemental from the Civil Court.

The Civil Court ruled against Garner, concluding that the Clerk "[was] not holding any funds of the Defendant [Kempf] subject to garnishment" and "that the Plaintiff [Garner] [was] not entitled to a judgment against the Garnishee Defendant, Vanderburgh County Clerk, in the amount of $5,000 for the release of the bond to Defendant's attorney in his criminal matter." In support of its ruling, the Civil Court relied on an internal court memorandum that the judges of the Circuit and Superior Court had sent to a prior Vanderburgh County clerk. In pertinent part, the memo instructed the clerk that bonds released in a criminal case are subject to garnishment orders and must be entered on the CCS in the criminal case.

> Please be advised that when a Court releases a bond in a criminal case, the release of the bond is subject to any garnishment orders, liens, or assignments placed against the bond. In order for such a claim to be placed against the bond, a minute must be entered on the Chronological Case Summary for the criminal case[.]

The Civil Court ruled against Garner because it concluded the Clerk was not holding any funds of Kempf subject to garnishment and, contrary to the internal memo, Garner failed to notify the Criminal Court of his garnishment lien pending against Kempf in the Civil Court.

Garner appealed, and a divided Court of Appeals reversed. *Garner v. Kempf*, 70 N.E.3d 408 (Ind. Ct. App. 2017). The Clerk then sought transfer, which we granted, thereby vacating the Court of Appeals' opinion.

## Discussion and Decision

This case involves the interplay among several statutes—those governing garnishments, proceedings supplemental, and bail bonds. *See* Ind. Code ch. 34-25-3; 34-55-8; 35-33-8 (2008 Repl.). We must determine not only what each statute means but also how each interacts with the others. A statute's meaning and scope are legal questions we review de novo. *ESPN, Inc. v. Univ. of Notre Dame Police Dep't.*, 62 N.E.3d 1192, 1195 (Ind. 2016). If a statute is clear and unambiguous, we apply its words and phrases "in their plain, ordinary, and usual sense." *KS&E Sports v. Runnels*, 72 N.E.3d 892, 898-99 (Ind. 2017) (citation omitted). As we interpret a statute, "we are mindful of both what it does say and what it does not say." *ESPN, Inc.*, 62 N.E.3d at 1195 (citations and internal quotation marks omitted). Our goal is to effectuate the statute's reasonable, commonly understood meaning.

We hold that the governing statutes permit a civil-judgment-creditor to garnish a cash bond held by a court clerk that a judgment-debtor has posted in an unrelated criminal matter, but those funds are available to the judgment-creditor only if the criminal court has ordered the bond released. Here, the Clerk should have held the cash bond posted in the criminal matter until the Civil Court determined Garner's right to the proceeds to satisfy his judgment. We reverse the trial court's judgment for the Clerk and remand with instructions to enter judgment for Garner.

# I.  Indiana law allows a judgment-creditor to garnish a cash bail bond posted by a judgment-debtor and held by a court clerk in an unrelated criminal matter.

## A. Court clerks are subject to garnishment proceedings.

Proceedings supplementary to execution are remedial actions authorized by statute. I.C. ch. 34-55-8 (2008 Repl.). They enable creditors to enforce money judgments against non-paying debtors. *Prime Mortg. USA, Inc. v. Nichols*, 885 N.E.2d 628, 668 (Ind. Ct. App. 2008). Because these proceedings merely continue the underlying suit, creditors must initiate them under the same case number and in the same court that issued the civil judgment. *Id.* See also Ind. Trial Rule 69(E). A court's sole objective in conducting proceedings supplemental is "determining whether an asset is in the judgment debtor's possession or subject to the judgment debtor's control and can be attached to satisfy the judgment." *Prime Mortg. USA*, 885 N.E.2d at 668 (quoting *State Farm Mut. Auto Ins. Co. v. Estep*, 873 N.E.2d 1021, 1029 (Ind. 2007) (Boehm, J., concurring in part and dissenting in part)). Cf. *Bowyer Excavating, Inc. v. Commissioner, Indiana Dept. of Environmental Management*, 671 N.E.2d 180, 184 (Ind. Ct. App. 1996) (finding "any technical distinction between" attachment and garnishment "irrelevant" because both procedures seek judgment-debtor's property, except attachment applies when debtor holds or controls his property and garnishment applies when third party possesses or controls defendant's property).

Garnishment is one option for satisfying a judgment through proceedings supplemental. See Trial Rule 69(E)(4); *Freidline v. Thomalla*, 852 N.E.2d 17, 20 (Ind. Ct. App. 2006). Garnishment is authorized by statute, I.C. ch. 34-25-3 (2008 Repl.), and applies when a third party holds or controls the judgment-debtor's property. If a judgment-creditor believes a third party possesses or manages property of the debtor subject to execution, the creditor must name the third party as a garnishee-defendant in the complaint for proceedings supplemental and serve both the debtor-defendant and garnishee-defendant with a summons to appear

in court to answer the complaint. T.R. 69(E)(4); I.C. §§ 34-25-3-2(a), (c) (2008 Repl.).

Indiana's garnishment statute specifically subjects "clerks of the circuit and superior courts" to garnishment to the extent they have "money or choses in action" belonging to a judgment-debtor "at the time of service of the garnishee process". *Id*. §§ 34-25-3-1(a)(1)(A), 1(b) (2008 Repl.). Trial-court clerks receive no special treatment or consideration as garnishee-defendants, but are treated "in the same manner as …other persons…subject to garnishment." *Id.* § 34-25-3-1(b) (2008 Repl.). In their official capacity, clerks often hold another person's money or property, including payment of judgments, fees, restitution, and bail. See *id*. ch. 35-33-8 (2008 Repl.).

We see no ambiguity in these statutes. They establish that court clerks can be garnishees, and they do not prohibit garnishing cash bail bonds.


**B. Our bail-bond statute does not prohibit garnishing cash bonds.**

Next, we consider whether the bail statute precludes garnishment and hold it does not. Like garnishments and proceedings supplemental, bail bonds also are governed by statute. *Id*. ch. 35-33-8 (2008 Repl.). When a clerk receives a criminal defendant's bond, she holds it (among other reasons) to ensure the defendant's appearance in court. *Id*. § 35-33-8-1(1) (2008 Repl.). By operation of law, a defendant who pays a cash bond agrees the court may "retain all or a part of the cash to pay publicly paid costs of representation and fines, costs, fees, and restitution that the court may order the defendant to pay if the defendant is convicted." *Id.* § 35-33-8-3.2(a)(1) (Supp. 2012). But a defendant may be entitled to recoup any remaining portion of the cash bond if the court alters or revokes bail, *id.* § 35-33-8-5 (2008 Repl.), or when the criminal matter ends, *id.* § 35-33-8-3.2(b) (Supp. 2012).

The Clerk argues Garner is not entitled to relief because Section 7(b) permits bond proceeds to be garnished only when the underlying civil judgment "aris[es] out of the same transaction or occurrence forming the

basis of the criminal case". *Id.* § 35-33-8-7(b) (Supp. 2012). Section 7(b) provides, in full:

> In a criminal case, if the court having jurisdiction over the criminal case receives written notice of a pending civil action or unsatisfied judgment against the criminal defendant arising out of the same transaction or occurrence forming the basis of the criminal case, funds deposited with the clerk of the court under section 3.2(a)(2) of this chapter may not be declared forfeited by the court, and the court shall order the deposited funds to be held by the clerk. If there is an entry of final judgment in favor of the plaintiff in the civil action, and if the deposit and the bond are subject to forfeiture, the criminal court shall order payment of all or any part of the deposit to the plaintiff in the action, as is necessary to satisfy the judgment. The court shall then order the remainder of the deposit, if any, and the bond forfeited.

*Id*. And here, it is undisputed, Garner's civil judgment is unrelated to the after-the-fact criminal charge in which Kempf posted the cash bond.

We view Section 7(b) differently than the Clerk and agree with the Court of Appeals that Section 7(b) "provides an additional safeguard" for judgment-creditors who are victims of the judgment-debtor's crime, *Garner*, 70 N.E.3d at 412, and does not limit garnishment to those narrow circumstances. In our view, Section 7(b) merely limits the authority of criminal courts to forfeit bond proceeds when the underlying civil judgment derived from the judgment-debtor's crime. But it does not prevent a judgment-creditor from seeking a garnishment lien on a bond that might eventually be paid to someone else with statutory priority to those proceeds. Stated differently, Section 7(b) delays forfeiture when the criminal court learns a crime victim is simultaneously seeking a civil judgment against the defendant for injury resulting from the crime. Section 7(b) thus stands as a narrow exception to the general rule that a court may declare a bond forfeited and order the funds transferred to the state common school fund when the criminal defendant fails to appear.

But this provision is not a broad rule generally exempting cash bail bonds from garnishment.

We conclude that nothing in Chapter 35-33-8, including Section 35-33-8-7(b), exempts cash bail bonds from proceedings supplemental or prohibits a judgment-creditor from garnishing the cash bond that a judgment-debtor deposits with the clerk in an unrelated criminal matter.

Our dissenting colleagues read the governing statutes differently. They believe cash bail bonds are not subject to garnishment in the same way as other assets of a judgment-debtor held by a third party. According to the dissent, unless specifically authorized by statute, bonds are not subject to garnishment, and a criminal court cannot authorize a clerk to release them to a judgment-creditor. We respectfully disagree with the dissent's asserted grounds for exempting bail bonds from general garnishment principles.

For starters, we note that the dissent raises an argument on behalf of the Clerk that the Clerk never made. She never argued that bonds are not subject to garnishment. To the contrary, the longstanding practice in Vanderburgh County, as reflected in their courts' "internal memo", was to subject criminal bail bonds to civil garnishment orders. The only catch was that the CCS in the criminal case had to reflect the judgment-creditor's claim against the bond.

Next, the dissent relies on two canons of statutory interpretation—the rule of lenity and the negative-implication canon—but neither canon applies here. The rule of lenity is an interpretive canon that penal statutes should be construed strictly. But the disputed bail-bond provisions are not penal statutes; they neither define a crime nor prescribe a penalty.

Neither does the negative-implication canon apply here. This canon— also known by the Latin phrase *expressio unius est exclusio alterius* ("the expression of one is the exclusion of another")—is a powerful interpretive rule when it applies. But it must be applied "with great caution, since its application depends so much on context." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS at 107 (2012). As Scalia and Garner explain, the canon applies only when the thing

expressed reasonably identifies **all** things included within the grant of what is being permitted or excluded. Consider the familiar restaurant sign "No dogs allowed". Nobody reasonably believes the restaurant intends to exclude only dogs and to welcome all other animals. The reason for the sign's limited exclusion is not that dogs are the only unwelcome animal, but that dogs are the animal most likely to be brought into a restaurant.

Similar context-based interpretive limits also apply to the bail-bond statute. This statute specifies when bail proceeds can be diverted for other purposes—to pay the "costs of representation and fines, costs, fees, and restitution that the court may order the defendant to pay if the defendant is convicted." I.C. § 35-33-8-3.2(a)(1) (Supp. 2012). The dissent infers from this list of approved uses that all other uses are forbidden, including the proposed use here of garnishing Kempf's bond to satisfy his unrelated civil judgment in favor of Garner. But that is not the best understanding of the legislature's enumeration. What the legislature has identified are approved alternative uses for bail proceeds in a specific, narrow context. That context, by its terms, is confined to what criminal courts may order done with bail bonds in the aftermath of a defendant's conviction. In other words, the legislature has identified an exhaustive list of authorized uses **within that specific context**. By negative implication, it follows that all other proposed uses within that context are foreclosed. But the disputed issue here falls **outside that context** – i.e., outside the criminal court's authority over the bond after a defendant's conviction – so the negative-implication canon does not apply. The legislature has not limited the extent to which a civil court may garnish bail proceeds to satisfy a civil judgment, and we decline to impose any such limits.

We also decline to embrace the dissent's view that a clerk of court may return bail proceeds only to the defendant and no one else. According to the dissent, that is the only permissible interpretation of subsections 3.2(b) and 7(f), which require that net bond proceeds be returned "to the defendant". [Dissent Op. 4.] Any contrary reading, in the dissent's eyes, puts clerks in a catch-22 situation, subjecting them to conflicting, incompatible duties that will cause them to breach an obligation to someone. We respectfully disagree.

For one thing, the dissent's interpretation would ban what the Clerk did below, which was to pay the $5,000 bond proceeds to Kempf's lawyer. The lawyer isn't the defendant. Yet the dissent is untroubled by this supposed violation of what they believe the statute requires. To be clear, we eschew such a hyper-literal interpretation of the statute. Instead, we believe the best, most reasonable interpretation is that the statute is merely recognizing that a bail bond is an asset of the defendant. And, all other things being equal, the defendant is entitled to have this asset, less any authorized deductions, returned to him when the bond is released because it is no longer needed to secure his appearance at trial. But we disagree that the statute requires this asset to be treated any differently for garnishment purposes than any other asset of the defendant.

In addition, our interpretation of the various statutes does not impose irreconcilable duties on clerks. Under our approach, bond proceeds presumptively belong to the defendant and are to be returned to the defendant unless—and it's an important unless—someone else has a claim to that property. One example of a competing claim, presented here, is when the judgment-creditor obtains a judgment in a civil case against the defendant and later secures a garnishment lien to secure payment of the judgment. Another example is when the bond is posted not by the defendant himself but by a third party on the defendant's behalf. In both situations, the bond is subject to a competing claim, so the clerk incurs no liability to the defendant when she pays out the bond not "to the defendant" but to someone else. The dissent's view would effectively overrule appellate precedent holding that a bond posted by a third party is to be returned to the third party. See, e.g., *J.J. Richard Farm Corp. v. State*, 642 N.E.2d 1384 (Ind. Ct. App. 1994). We believe that precedent to be correct and disagree with the dissent's implicit rejection of it.

The dissent also says our approach leads to an unjust result [Dissent Op. 5], but we don't see it that way. As a threshold matter, courts should interpret statutes based on their enacted text and not the justness of the outcome. If the legislature writes a statute imposing an onerous outcome, it is not our job to soften the blow. On this record, Garner did precisely what the statutes and Trial Rule 69(E) required of him. He filed his garnishment complaint in the civil action where he obtained the judgment

against Kempf and served it and the summons on the Clerk. The Clerk, who had notice of the pending garnishment proceeding and of Garner's lien against the bond proceeds, failed to discharge her duty as a garnishee-defendant.

## C. Indiana case law does not prohibit garnishing cash bail bonds.

Next, we reject the Clerk's argument that a pair of appellate decisions compels a different result. See *O'Laughlin v. Barton*, 549 N.E.2d 1040 (Ind. 1990); *J.J. Richard Farm Corp.*, 642 N.E.2d 1384. Neither *O'Laughlin* nor *J.J. Richard Farm Corp.* addressed the precise issue presented here, which is whether cash bail bonds are garnishable under Indiana law.

*O'Laughlin* addressed mandatory bond forfeiture and transfer to the common school fund when the defendant failed to appear in a criminal matter. 549 N.E.2d at 1042. We did not hold that bonds are not garnishable. In fact, we explained that the Indiana State Treasurer would be a necessary party to proceedings supplemental to determine rights to a posted cash bond, implying the bond **could** be garnished. *Id.* Our narrow holding was that the trial court should have forfeited the cash bail bond when the defendant failed to appear, and that the forfeited proceeds should have been transferred to the state's common school fund. *Id.*

Nor does *J.J. Richard Farm Corp.* control here. It did not address garnishments; it addressed ownership interests in a cash bond. 642 N.E.2d at 1385-86. There, a criminal defendant's employer posted $50,000 bail. *Id.* at 1385. Once the criminal matter concluded, the prosecutor tried to attach the cash bond to satisfy the defendant's child-support arrearage. *Id.* The employer intervened and sought return of the bond since it retained ownership of the money throughout the criminal proceedings. *Id.* The Court of Appeals agreed with the employer, holding the trial court erred in failing to remit the $50,000 bond to the employer. *Id.* at 1386. Only in dicta did the Court recite the comment on which the Clerk relies here—that cash bonds should not be applied to a defendant's debts outside the narrow parameters of Section 35-33-8-7(b). *Id.* at 1387-88. Our discussion above in Section I.B. establishes those dicta are misplaced.

D. In a garnishment case, the civil court with jurisdiction over proceedings supplemental does not automatically yield jurisdiction to the criminal court that admitted the defendant to bail.

Under Indiana law, the court that issued the underlying civil judgment retains jurisdiction over proceedings supplementary to execution. See *Prime Mortg. USA, Inc.*, 885 N.E.2d at 668; T.R. 69(E). Even when proceedings supplemental run parallel to some other action in another court—e.g., a criminal matter or estate administration—the proceedings-supplemental court does not yield jurisdiction to the other court. Cf. *Murphy v. Busick*, 22 Ind. App. 247, 248-49, 53 N.E. 475 (1899) (explaining that party acting under direction of circuit court in one county does not prevent circuit court in another county from requiring him to answer in supplementary proceedings).

Reinforcing this conclusion is Trial Rule 69(E), which specifically directs that proceedings supplementary to execution must be filed in the civil court that rendered the underlying judgment. "Notwithstanding any other statute to the contrary, proceedings supplemental to execution may be enforced by verified motion or with affidavits in the court where the judgment is rendered[.]" T.R. 69(E). On matters of procedure, to the extent a statute is at odds with our rule, the rule governs. See *State ex rel. Gaston v. Gibson Circuit Ct.*, 462 N.E.2d 1049, 1051 (Ind. 1984) ("this Court has the authority to adopt procedural rules governing the conduct of litigation, and these rules take precedent over conflicting statutes.").

Reviewing the relevant caselaw and the various statutes in tandem, we see no prohibition against garnishing bail bonds. Because the Indiana Code expressly provides that circuit- and superior-court clerks can be named as garnishee-defendants—subject to garnishment in the same manner and to the same extent as others—we hold that cash-bond proceeds held by such clerks are garnishable.

## II. The Clerk is liable to Garner for the $5,000 bond proceeds.

The Clerk does not dispute that Garner properly initiated proceedings supplementary to execution to garnish Kempf's cash bail bond. Garner filed a complaint in the same Civil Court and under the same case number as the underlying civil judgment. And Garner served both Kempf and the Clerk with a summons to appear in the proceedings supplemental. When a garnishee-defendant receives a summons to appear in proceedings supplemental, she becomes "accountable to the plaintiff in the action for the amount of money, property, or credits in the garnishee's possession or due and owing from the garnishee to the defendant." I.C. § 34-25-3-3 (2008 Repl.). In effect, upon serving the summons, the judgment-creditor secures a lien on the defendant-debtor's property then held by the garnishee-defendant. *Butler v. Jaffray*, 12 Ind. 504, 511 (1859). See also *Radiotelephone Co. of Indiana, Inc. v. Ford*, 531 N.E.2d 238, 240 (Ind. Ct. App. 1988) ("The rule today is the same as it has been for over one hundred years; a creditor acquires an equitable lien on funds owed by a third party to the judgment debtor from the time the third party receives service of process in proceedings supplemental."); *Fifth Third Bank v. Peoples Nat'l. Bank*, 929 N.E.2d 210, 214 (Ind. Ct. App. 2010) ("It is well settled under Indiana law that a judgment creditor acquires an equitable lien on funds owed by a third party to the judgment debtor from the time the third party receives service of process in proceedings supplemental.") (citation omitted). Consequently, the garnishee-defendant "in proceedings supplemental is liable for paying out funds in a manner inconsistent with the judgment creditor's lien." *Id.* (citation omitted).

Here, the Clerk's duty was to hold the cash bond posted in the criminal matter pending the Civil Court's determination of Garner's right to the proceeds to satisfy his judgment. See *First Nat'l. Bank of Indianapolis v. Armstrong*, 101 Ind. 244, 247 (1885). The Clerk failed to inform the Criminal Court of the lien, and then she released the bond to Kempf's attorney despite having been served with the garnishment complaint in the Civil Court. It is no excuse that the Criminal Court ordered the Clerk to release the bond to the attorney. "Even when forcibly divested, [the garnishee] will be presumed responsible for the forthcoming of the

property", *id.*, because she holds the money received from any claimant until there has been a final determination by the court hearing the proceedings supplemental. *Id.* When the Criminal Court judge, unaware of the judgment-creditor's lien, approved Kempf's request to use those proceeds to pay his defense counsel's fees, those proceeds were no longer encumbered to ensure Kempf's appearance at his criminal trial. At that point, the proceeds were subject to Garner's preexisting garnishment lien in the Civil Court. Because the Clerk released the $5,000 cash bond before the Civil Court determined Garner's right to the proceeds, she is liable to Garner for that amount.

## Conclusion

For these reasons, we reverse the trial court's judgment for the Clerk and remand with instructions to enter judgment for Garner in the amount of $5,000.

Massa and Goff, JJ., concur.
David, J., dissents with separate opinion in which Rush, C.J., joins.

**David, Justice, dissenting.**

I respectfully dissent from the majority's opinion. The case at bar is one dealing with an issue of first impression in our State. No other Indiana appellate case has expressly decided whether garnishment of criminal bail bonds held by the clerk of a court is permissible to satisfy an unrelated civil judgment. Thus, we are not bound by precedent on this issue and, in the absence of express statutory authority permitting garnishment of bail bonds in a criminal case to satisfy a judgment in an unrelated civil case, Garner should be precluded from garnishing the cash bond Kempf posted. Accordingly, I would hold that the Vanderburgh County Clerk cannot be held liable for complying with the criminal court's order to release the proceeds of the cash bond.

The majority correctly articulates much of our State's garnishment and bail bond law. Indeed, a judgment-creditor who believes a third party holds or controls the judgment-debtor's property that is subject to garnishment is instructed by Trial Rule 69(E)(4) to name the third party as a garnishee-defendant in the complaint for proceedings supplemental and to serve both the debtor-defendant and garnishee-defendant with a summons. A judgment creditor who follows these instructions undoubtedly acquires an equitable lien on funds owed by a third party to the judgment-debtor; such lien is acquired at the time the third party receives service of process in proceedings supplemental. *Fifth Third Bank v. Peoples Nat'l Bank*, 929 N.E.2d 210, 214 (Ind. Ct. App. 2010). Furthermore, I do not disagree that Indiana's garnishment statute clearly makes "clerks of the circuit and superior courts" subject to garnishment to the extent they have "money or choses in action" belonging to a judgment-creditor "at the time of service of the garnishee process." Ind. Code §§ 34-25-3-1(a)(1)(A), 1(b). But I'm not convinced that bail bonds, despite at times being held by court clerks, are subject to garnishment in the same way that other money held by a third party is.

Bail bonds are different and were not intended to be subject to garnishment under these circumstances. As Judge Pyle articulated in his Court of Appeals dissent, the statutes outlining the parameters of bail bonds are criminal in nature, and must, therefore, be construed strictly.

Indiana Code section 35-33-8-1 defines a "bail bond" as a bond that is "executed by a person who has been arrested for the commission of an offense, for the purpose of ensuring (1) the person's appearance at the appropriate legal proceeding; (2) another person's physical safety; or (3) the safety of the community." While our bail bond statute allows a court to "retain [bail bond] cash to pay publicly paid costs of representation and fines, costs, fees, and restitution . . . ," Ind. Code § 35-33-8-3.2(a)(1), it does not explicitly authorize wholesale garnishment of bail bonds by judgment creditors. In fact, the statute contemplates only one instance in which garnishment of a bail bond held by a court clerk is permissible to satisfy a civil judgment: that is, only where the civil case arose out of the same transaction or occurrence as the underlying criminal matter. See Ind. Code §§ 35-33-8-7(b).

The majority takes a view of the relevant statutes that is much too broad. Rather than confining the circumstances in which a judgment creditor may garnish bonds to those enumerated by our legislature, it broadly holds that because our bail bond statutes do not explicitly prohibit garnishment, doing so must be permissible. The majority also reads Section 7(b) as merely "'provid[ing] an additional safeguard' for judgment-creditors who are victims of the judgment-debtor's crime" and concludes that the section, therefore, "does not limit garnishment to those narrow circumstances [outlined by the bail bond statute]." Slip op. at 7. Such a broad reading is not reconcilable given our legislature's affirmative act of limiting garnishment to circumstances arising out of the same transaction or occurrence as those in the underlying criminal case. It is also contrary to the long-standing canon of construction *expressio unius est exclusio alterius*: the expression of one thing implies the exclusion of others. *See State v. Willits*, 773 N.E.2d 808, 813 (Ind. 2002). Through its broad holding, the majority reads exceptions into the statute that are not there and ignores that the legislature has already outlined several exceptions in section 3.2(a)(2): bail money taken to pay costs of representation, fines, fees, and restitution. Since the bail bond statutes expressly include not one, but several instances when funds need not go to the defendant, we can infer that the legislature intended no others. Today's decision judicially grafts language onto our bail bond statutes.

Our case law also supports a narrower reading of the relevant statutes. *O'Laughin v. Barton*, 549 N.E.2d 1040 (Ind. 1990) is the only case our Court has decided that deals with a similar issue. There, we tackled whether a judgment-creditor could garnish a cash bond before the bail was forfeited to the common school fund. *Id.* Our Court held that the appellant's cash bond must be forfeited, and we ordered the clerk to transmit the funds resulting from said forfeiture for placement in the common school fund. *Id.* at 1042. *O'Laughlin*'s holding indicates that, as a general matter, cash bonds cannot be garnished. In my view, Section 7(b), which I agree was added in response to our decision in *O'Laughlin*, modified our holding, but only to the extent that it allowed for a civil judgment creditor in a case *related* to the underlying criminal matter to garnish the cash bail posted by the defendant. Thus, rather than an additional safeguard, as the majority characterizes Section 7(b), I see it as a narrow exception to the general rule that bail bonds cannot be garnished. Under this interpretation, I see no reason to now find that our decision in *O'Laughlin* does not preclude garnishment of the bail bond in this instance.

I prefer adopting the approach our neighbors in Illinois have implemented, generally finding that without express statutory authority, bail bonds are subject to neither attachment nor garnishment by private persons. *See Gende v. Flemming*, 371 N.E.2d 191, 192 (Ill. App. Ct. 1977); *A-1 Lithoplate, Inc. v. AFS Pub. Co.*, 384 N.E.2d 395, 396 (Ill. App. Ct. 1978). Such an approach aligns with one of the primary purposes of bail bonds—securing the defendant's presence at hearings—which I'm afraid may be undermined when a defendant realizes he will not recover his bail bond money, despite complying with the terms of his bond. It also guards against the undue delay, excess litigation, and collision between judicial tribunals that is caused when unrestricted garnishment of bail bonds is allowed. *See Gende*, 371 N.E.2d at 193. We need not look further than the case at bar to identify an instance where a court clerk was forced to choose between two conflicting court orders. Where the victim in the criminal case is also the judgment holder, it makes sense to override the purposes of bail bonds and that is precisely what our legislature has done here, Ind. Code §§ 35-33-8-7(b), but had our legislature intended to make bail bonds the subject of garnishment in other circumstances, I trust they would have

outlined those particular instances in our statutes as well. Should our legislature wish to amend the existing statute to expose cash bonds in criminal cases to routine garnishment, they are certainly empowered to do so. But until then, our Court should interpret narrowly the circumstances under which bail bond garnishment is permitted.

Furthermore, even if bail bonds are not different than other money held by a third party, I fear the majority overlooks two issues that arise with today's holding. The first is a practical complication; very little in the majority's opinion guards against the garnishment of bail bonds before the matter pending has concluded. Although the majority states in one of the discussion's opening paragraphs that cash bond "funds [held by the court clerk] are available to the judgment-creditor only if the criminal court has ordered the bond released," slip op. at 4, it neglects to discuss this point further and fails to reference it in its conclusion. My fear is that, without an explicitly articulated mechanism keeping the bail bond funds in the custody of the trial court until the pending matter is complete, a trial court may be left handicapped in its efforts to ensure the defendant's return for future hearings. It is true that in the instant case the bail bond no longer served the purpose of ensuring Kempf's appearance before the criminal court, but it is not difficult to see how the vacuum left by today's decision could hinder a trial court's ability to secure a defendant's return for future hearings. Although I disagree that bail bonds are garnishable without specific legislative authorization, if we read our statutes to allow garnishment of bail bonds in all situations, we should also do more to make explicitly clear that such garnishment can only occur after the pending criminal matter has concluded.

The second is a much more serious issue. The majority overlooks that its holding is in direct conflict with two sections of our bail bond statute. The first, Indiana Code section 35-33-8-3.2(b) requires "the clerk to remit the amount of the deposit remaining under subsection (a)(2) to the defendant" "[w]ithin thirty (30) days after disposition of the charges against the defendant." The second, Indiana Code section 35-33-8-7(f), says: "[t]he clerk shall return a deposit, less the administrative fee, made under section 32(a)(2) of this chapter to the defendant, if the defendant appeared at trial and the other critical stages of the legal proceedings."

The plain language of these statutes seems quite clear to me: the statutes require return of the funds to the defendant. But the majority concludes that "the Clerk's duty was to hold the cash bond posted in the criminal matter pending the Civil Court's determination of Garner's right to the proceeds to satisfy his judgment." Slip Op. at 13. I fear the majority's interpretation of the bail bond statutes places conflicting duties on clerks; clerks would have to both remit bail bond funds to a defendant and hold the funds pending proceedings supplemental. The two are incompatible; the Clerk will breach a legal duty either way. Such a contradiction could not have been the legislature's intent, but we can avoid contradiction by applying our case law's statutory construction principles. First, we have repeatedly said that "irrational and disharmonizing" results cannot stand. *West v. Office of Ind. Sec'y of State*, 54 N.E.3d 349, 355 (Ind. 2016). Likewise, we avoid reading statutes to reach unjust results. *E.g. Tin Thang v. State*, 10 N.E.3d 1256, 1264 (Ind. 2014). Since the majority's outcome is both disharmonizing and unjust—it is at odds with a plain reading of our bail bond statutes and subjects clerks to personal liability for following the letter of the law—only an interpretation of our statutes that spares a clerk liability should prevail.

In sum, I believe a reading of the statute as broad as our majority has allowed—permitting garnishment of a bail bond to satisfy a judgment in an unrelated civil case where our legislature has not authorized it—departs from the way we treat criminal statutes. I also fear the majority overlooks the tension within our statutes that this holding creates and the impossible predicament it places our court clerks in. Given the criminal court's order directing release of the bond proceeds, and in absence of statutory authority indicating that garnishment of the posted bail is permissible to satisfy a judgment from an unrelated civil case, I think the Clerk correctly released the cash bond to Kempf's criminal defense attorney. Accordingly, I would affirm the civil trial court's decision to deny Garner's motion for proceedings supplemental and find that the Clerk cannot be held liable to Garner.

Rush, C.J., concurs.

**ATTORNEY FOR APPELLANT**

Curt J. Angermeier
Evansville, Indiana


**ATTORNEY FOR APPELLEE**

Joseph H. Harrison
Evansville, Indiana